KATY KOSKI (*pro hac vice*)
 kkoski@foley.com
LEA GULOTTA JAMES (*pro hac vice*)
 ljames@foley.com
AMANI KMEID (*pro hac vice*)
 akmeid@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Telephone: 617.342.4000
Facsimile: 617.342.4001

MICAH A. CHAVIN, CA Bar No. 313634
 micah.chavin@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Telephone: 415.434.4484
Facsimile: 415.434.4507

*Attorneys for Defendants AIOS, INC. d/b/a Fella Health and Delilah, FELLA MEDICAL GROUP P.A., and FELLA MEDICAL GROUP P.C.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVO NORDISK A/S and NOVO NORDISK INC.<br><br>                    Plaintiffs,<br><br>        vs.<br><br>AIOS INC d/b/a FELLA HEALTH AND DELILAH, FELLA MEDICAL GROUP P.A., FELLA MEDICAL GROUP P.C.,<br><br>                    Defendants. | Case No. 4:25-cv-06560-YGR<br><br>**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Complaint Filed: August 4, 2025<br>Amended Complaint Filed: November 12, 2025<br><br>Hon. Judge Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................ 2

II. RELEVANT FACTUAL BACKGROUND ..................................................................... 3

  A. Fella Health Is a "Telehealth Platform That Provide(s) Weight Loss Treatments" ......................... 3

  B. Fella Medical Group P.A. and Fella Medical Group P.C. ........................................................... 3

  C. Drug Compounding .................................................................................................................. 4

III. ARGUMENT .................................................................................................................. 4

  A. Legal Standards ....................................................................................................................... 4

  B. Novo Fails to Establish Article III Standing ............................................................................. 5

  C. Novo Does Not Have Standing For Lanham Act Claims Against Fella Health ............................... 6

    1.  Fella Health and Novo Are Not Competitors ....................................................................... 8

    2.  Novo Failed to Plead Commercial Injury Caused by Fella Health ......................................... 9

    3.  Novo Failed to Plead Harm to Its Reputation ..................................................................... 11

    4.  Novo Cannot Rely on Harm to Customers to Show Standing ............................................... 12

  D. Novo Does Not Have Standing to Assert Its False Advertising Claim Under the UCL ................. 12

  E. Novo Has No Standing to Bring Its UCL Claim for Corporate Practice of Medicine ................... 13

  F. Novo Fails to State a Claim For False Advertising .................................................................... 14

    1.  Novo Does Not Adequately Plead False Advertising ........................................................... 14

  G. Novo's UCL Unlawful/Corporate Practice of Medicine Claim Fails ........................................... 20

    1.  There is a Comprehensive Administrative Regulatory Scheme Under the MPA that Bars a Claim Under the UCL ................................................................................................ 20

    2.  Novo Fails to State a Claim That Defendants Violated the MPA ........................................... 22

    3.  Novo Cannot Assert Claims Founded on Statements Made or Actions Taken Regarding Tirzepatide, a Medication it Does Not Manufacture or Sell ................................................. 24

  H. Novo Does Not Properly Plead Unfair Competition in Violation of Common Law ....................... 24

IV.   CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Allbirds, Inc. v. Giesswein Walkwaren AG*, 2020 WL 6826487 (N.D. Cal. June 4, 2020) ..................... 12

*Allergan USA, Inc. v. Imprimis Pharms., Inc.*,
 No. 8:17-cv-01551-DOC-JDE, 2019 WL 4545960 (C.D. Cal. Mar. 27, 2019) ................................ 15

*Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292 (2007)................................................ 21

*Am. Acad. of Emergency Med. Physician Grp., Inc. v. Envision Healthcare Corp.*, No. 22-421, 2022 WL
 2037950 (N.D. Cal. 2022)........................................................................................................... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 4, 5, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 4, 25

*Charlotte's Web, Inc. v. Aaxll Supply Co. LLC*, Case No. 4:20-cv-02692-YGR, 2020 WL 6891876 (N.D.
 Cal. Nov. 24, 2020)......................................................................................................................... 8

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) .................................................................... 14

*Daro v. Sup. Ct.*, 151 Cal. App. 4th 1079 (2007) ......................................................................... 13

*Eli Lilly & Co. v. Adonis, Inc. d/b/a Henry Meds.*, No. 25-3536, 2025 WL 2721684 (N.D. Cal. Sept. 24,
 2025) ...................................................................................................................................... 9, 18

*Eli Lilly & Co. v. Willow Health Servs., Inc.*, No. 2:25-CV-03570-AB-MAR, 2025 WL 2631620 (C.D.
 Cal. Aug. 29, 2025)................................................................................................................ passim

*Farmers Ins. Exch. v. Sup. Ct.*, 137 Cal. App. 4th 842 (2006) ...................................................... 21

*Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180 (N.D. Cal. 2015) ............................................... 12

*GovernmentGPT Inc. v. Axon Enter. Inc.*, 769 F. Supp. 3d 959 (D. Ariz. Mar. 7, 2025) ................... 8, 12

*Grzeslo v. Phillips*, No. 1:24-cv-00615-SAB, 2024 WL 4333336 (E.D. Cal. Sept. 27, 2024) ............... 21

*HomeLight, Inc. v. Shkipin*, 694 F. Supp. 3d 1242 (N.D. Cal. 2023) ....................................... 11

*Hong Kong Supermarket v. Kizer*, 830 F.2d 1078 (9th Cir. 1987)............................................... 12, 24

*In re Mortgages Ltd.*, No. 2:08-BK-07465-RJH, 2013 WL 1336830 (D. Ariz. Mar. 29, 2013); ............ 25

*Ingels v. Westwood One Broadcasting, Servs., Inc.*, 28 Cal. Rptr. 3d 933 (Ct. App. 2005)..................... 22

*Israel v. Carter*, No. 2:21-cv-1267, 2022 WL 874941 (E.D. Cal. Mar. 24, 2022)................................. 21

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......................................................... 5

*Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782 (N.D. Cal. 2024) .............................. 3

*Kurin, Inc. v. ICU Med., Inc.*, No. 24-CV-00564, 2024 WL 54166772 (C.D. Cal. Nov. 8, 2024) .......... 18

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. 12-3762, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014) ....................................................................................................................... 14

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) .................................................. 12, 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........................... 6, 7, 8, 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................. 5

*Maffick LLC v. Facebook, Inc.*, No. 20-CV-05222-JD, 2021 WL 1893074 (N.D. Cal. May 11, 2021) .. 11

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369 (4th Cir. 2012) ........................... 7

*McMichael v. Cnty. of Napa*, 709 F.2d 1268 (9th Cir. 1983) ................................................................. 12

*Min Sook Shin v. Umeken USA, Inc.*, 773 Fed. App'x 373 (9th Cir. 2019) ................................................ 5

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989) ...................................................... 7

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336 (2003) .... 18

*Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*, 48 F.4th 1040 (9th Cir. 2022) 4, 16, 20, 22

*Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114 (S.D.N.Y. 1993) ....................................... 11

*Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ............................... 5, 6

*Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067 (N.D. Cal. 2025) ....................... 5

*Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-cv-01280, 2022 WL 20286688 (N.D. Cal. Feb. 24, 2022) ....................................................................................................................... 17

*Shaker v. Nature's Path Foods, Inc.*, No. 13-1138, 2013 WL 672802 (C.D. Cal. Dec. 16, 2013) .... 14, 18

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ................................................. 17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......................................................................................... 6

*Strategic Partners, Inc. v. FIGS, Inc.*, No. 19-2286, 2019 WL 12435672 (C.D. Cal. Aug. 19, 2019) ... 17, 18

*ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. 18-4189, 2019 WL 3840988 (D. Ariz. Aug. 15, 2019) ....................................................................................................................... 6, 7, 11

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164 (D. Ariz. Jan. 16, 2020) ....................................................................................................................... 8

*Thermolife Int'l, LLC v. BPI Sports, LLC*, 2022 WL 612669 (9th Cir. Mar. 2, 2022) ...................... passim

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) ............................................... 11

*TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820 (9th Cir. 2011) ................................ 7

*TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) ................................................ 5

*Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, No. CV 20-9482-DMG (ASx), 2021 WL 4134841
     (C.D. Cal. Aug. 6, 2021) ................................................................ 8

*Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747 (E.D. Cal. 2021) ..................... 25

**Statutes**

21 U.S.C. § 353a(a) .......................................................................... 4, 10, 19

21 U.S.C. § 353a(b)(2) ......................................................................... 10, 12

21 U.S.C. § 353b(a) ............................................................................... 4, 19

Cal. Bus. & Prof. Code § 17204 ....................................................................... 14

Cal. Bus. & Prof. Code § 2400 ......................................................................... 24

Cal. Bus. & Prof. Code § 2502 ......................................................................... 24

**Rules**

21 U.S.C. § 353b ..................................................................................... 18

21 U.S.C. §§ 353a(a), 353b(a) ....................................................................... 18

Fed. R. Civ. P. 12(b)(6) ............................................................................ 3, 5

Fed. R. Civ. P. 8(a) .................................................................................... 3

Fed. R. Civ. P. 9(b) ............................................................................... 3, 5

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 10, 2026 at 2:00 p.m. or as soon thereafter as this matter may be heard before the Honorable Yvonne Gonzalez Rogers of the above-captioned Court, located at Courtroom 1 – 4th Floor, 1301 Clay Street, Oakland, CA 94612, Defendants Aios Inc. d/b/a Fella Health and Delilah ("Fella Health"), Fella Medical Group P.A. ("Fella Medical Florida"), and Fella Medical Group P.C. ("Fella Medical California") (collectively, "Defendants") will, and hereby do, move this Court for an order dismissing all causes of action alleged in Plaintiffs Novo Nordisk A/S and Novo Nordisk Inc.'s (collectively, "Novo") Amended Complaint with prejudice.

The Motion to Dismiss is made pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 8(a), and 9(b). The grounds for the Motion to Dismiss are that Novo lacks standing to pursue its claims under Article III, the Lanham Act, and California's Unfair Competition Law. Further, Novo fails to state a claim for relief. Accordingly, Defendants request the Court dismiss the Amended Complaint with prejudice.

Defendants' Motion to Dismiss is based on this Notice, the accompanying Memorandum of Points and Authorities, the files and records in this case, and any further written or oral argument as permitted to be presented at the hearing.

1

## I.    __INTRODUCTION__

2    This case is only one in a series of hundreds brought by Novo Nordisk A/S and Novo Nordisk Inc.

3   (collectively, "Novo") as a coordinated attack on the compounded drug industry. Novo attempts to

4   circumvent the Congressional mandate of the Food, Drug, and Cosmetic Act ("FDCA") by purporting to

5   challenge advertising under the federal Lanham Act, the California Unfair Competition Law, and common

6   law, and attempting to enforce California's prohibition on the corporate practice of medicine ("CPOM").

7   But Novo cannot accomplish its goal of eradicating compounded medications in this venue. The Amended

8   Complaint (ECF No. 42, " Am. Compl.") spends nearly half its length excoriating compounded drugs in

9   general, presenting a carefully crafted "parade of horribles" that has nothing to do with the defendants in

10  this case and attempting to vindicate the rights of consumers rather than asserting its own rights.

11    The Amended Complaint does not meet the most basic of thresholds to be in this Court as it is

12  devoid of allegations of concrete, imminent harm that **Novo** has or will suffer because of Defendants. In

13  spite of its conclusory declarations designed to cure the glaring deficiencies in the original Complaint

14  (ECF No. 1), Novo still fails to plead a lost sale, or identify any consumer that received a Fella Health

15  product that would otherwise have received a Novo product. That would be difficult to credibly allege

16  given that using compounded drugs is not a consumer choice but rather is a result of a provider's

17  determination that a compounded medication is indicated for a particular patient. Further, Novo fails to

18  tie any harm it may have experienced to Defendants' actions.

19     Novo's inability to articulate injury stemming from  Defendants' actions is fatal to Novo's claims

20  on multiple fronts. First, without an injury in fact, the Court lacks Article III subject matter jurisdiction.

21  Second, the Lanham Act's statutory standing requirements are more stringent than those of Article III,

22  requiring a showing of an injury to a commercial interest flowing from the defendant's alleged conduct.

23  Third, the UCL—under which Novo brings both a false advertising claim and a CPOM claim—has a yet

24  higher standing requirement, necessitating the injury at issue be lost money or property. And last, the

25  failure to set forth a cognizable injury related to some action by Defendants similarly defeats all of Novo's

26  claims on the merits, as harm is an essential element of a claim under the Lanham Act, the UCL, and

27  common law. Likewise, despite its voluminous Amended Complaint, Novo has not plausibly alleged false

28  advertising, a violation of the corporate practice of medicine, or any other theory under the UCL.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Fella Health Is a "Telehealth Platform That Provide(s) Weight Loss Treatments"

Fella Health is a telehealth company that acts as a management services organization ("MSO") offering administrative services, technological infrastructure, and support to a network of licensed medical providers. Am. Compl. ¶ 29 ("Fella Health and Delilah are telehealth platforms that provide weight loss treatments."). Fella Health contracts with providers for access to its proprietary telehealth platform, facilitating the virtual care that the providers independently provide to patients. Fella Health manages a website on behalf of itself and associated providers that informs prospective patients of the providers' services and identifies certain drugs they may prescribe, including but not limited to compounded semaglutide. *See generally* https://www.fellaheath.com.[1] Fella Health does not provide medical services, compound drugs, or manufacture drugs. Fella Health members receive a treatment plan from a licensed healthcare provider, and that plan may include prescription drugs, including compounded prescription drugs. Fella Health's services include facilitating the purchase of the compounded medications prescribed by those providers from state-licensed and/or FDA-registered pharmacies.

### B.     Fella Medical Group P.A. and Fella Medical Group P.C.

Fella Medical Group P.A. ("Fella Medical Florida") is a Florida professional association, the "purpose of which is to engage in the practice of medicine… as authorized by applicable Florida law." *See* Florida Department of State—Division of Corporations, Articles of Incorporation of Fella Medical Group, P.A., *available at* https://dos.fl.gov/sunbiz/search/.[2] Fella Medical Group P.C. ("Fella Medical California") is a California professional corporation engaged in the practice of medicine under California law. Dr. Rafid Fadul is the Director and CEO of Fella Medical California. *See* State of California—Office of the Secretary of State, Statement of Information Corporation, Fella Medical Group P.C., *available at* https://bizfileonline.sos.ca.gov/search/business. Both entities are responsible for providing healthcare

---

[1] The Court may take judicial notice of Fella Health's website as it is a "publicly accessible website[] whose accuracy and authenticity are not subject to dispute." *See In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1008 (N.D. Cal. 2020), *rev'd on other grounds*, 84 F.4th 844 (9th Cir. 2023). Novo has cited significant portions of the Fella Health website in the Amended Complaint.
[2] "The Court may take judicial notice of undisputed and publicly available information displayed on government websites" and "matters of public record." *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 807 (N.D. Cal. 2024) (taking judicial notice of FDA webpage). Fella Medical California and Fella Medical Florida's corporate filings are matters of public record and are available at government websites.

services to patients, including diagnosis, treatment, and prescribing. Fella Health, *Terms of Use*, FELLA, https://www.fellahealth.com/terms-of-use. These services are all carried out by doctors and other healthcare professionals licensed by the States in which they practice.

### C.    Drug Compounding

Contrary to Novo's half-hearted suggestion that compounded drugs are illegal and dangerous, compounding is legal and regulated by the Food and Drug Administration ("FDA") under Sections 503A and 503B of the FDCA. *See* 21 U.S.C. §§ 353a(a), 353b(a); Am. Compl. ¶¶ 9, 62-64. "Congress does not subject compounded drugs to an approval process it uses for new drugs because valid compounding has traditionally been seen as an appropriate means of customizing existing drugs to the needs of individual patients." *Nexus Pharms., Inc. v. Central Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1042 (9th Cir. 2022) (affirming dismissal of claims challenging compounding pharmacy's actions on grounds of implied federal preemption and the prohibition on private enforcement of the FDCA); Am. Compl. ¶ 9 n.1.

As Novo acknowledges, for a period of nearly two years it was unable to adequately supply the market with its branded semaglutide products. *See* Am. Compl. ¶ 9 n.2. During that time, compounding pharmacies were expressly permitted to make and supply essential copies of Novo's semaglutide products. *See* U.S. Food & Drug Admin., *Compounding when Drugs are on FDA's Drug Shortages List*, FDA.GOV (last updated December 18, 2024), https://tinyurl.com/2z9yjsxu; U.S. Food & Drug Admin., *FDA clarifies policies for compounders as national GLP-1 supply begins to stabilize*, FDA.GOV (last updated April 28, 2024), https://tinyurl.com/3b8yms9p. After the shortage ended, compounding pharmacies continued to be authorized to compound medications containing semaglutide prescribed for a specific patient.

### III.    ARGUMENT

### A.    Legal Standards

To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). The allegations in the complaint must "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive this challenge, Novo must plead "***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678 (emphasis added). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id*. at 679 (alteration original) (quoting Fed. R. Civ. P. 8(a)(2)). The Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Fed. R. Civ. P. 9(b) requires a pleading party "alleging fraud" to "state with particularity the circumstances constituting fraud." False advertising claims often allege a "unified course of fraudulent conduct," thus triggering the Rule 9(b) particularity requirement. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127-28 (9th Cir. 2009) (dismissing UCL claims, among others, based on failure to plead fraudulent course of conduct with particularity); *see also Min Sook Shin v. Umeken USA, Inc.*, 773 F. App'x 373, 376 (9th Cir. 2019) (same); *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1095 (N.D. Cal. 2025) ("[S]everal district courts in the Ninth Circuit have applied Rule 9(b) to false advertising claims brought under the Lanham Act because such claims are grounded in fraud." (citation omitted)).

## B. Novo Fails to Establish Article III Standing

Pursuant to Federal Rule of Civil Procedure 12(b)(1), all of Novo's claims must be dismissed for lack of Article III standing. "As the party invoking federal jurisdiction, [Novo] bear[s] the burden of demonstrating that [it] ha[s] standing." *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quoting *TransUnion LLC v. Ramirez,* 594 U.S. 413, 430-31 (2021)). "[S]tanding is not dispensed in gross; rather, [Novo] must demonstrate standing for *each claim* that they press and for *each form of relief* they seek[.]" *TransUnion,* 594 U.S. at 431 (emphasis added). To establish this Court's subject matter jurisdiction over each claim, Novo is required to adequately allege that is has a "personal stake" in the case, that is: (1) Novo must have suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent"; (2) "there must be a causal connection between the injury and the conduct complained of (often described as whether the injury is 'fairly traceable' to the challenged conduct); and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Popa,* 153 F.4th at 788 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189, 2019 WL 3840988, *9 (D. Ariz. Aug. 15, 2019) ( "*Am. Fitness*") (dismissing Lanham Act and state unfair competition claims for

lack of Article III standing for failure to allege a redressable injury). For an injury to be "concrete," it "must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

In dismissing a substantially similar complaint by drug manufacturer Eli Lilly and Company ("Lilly) bringing Lanham Act and UCL claims against a telehealth company, Judge Corley found Lilly failed to adequately plead subject matter jurisdiction, holding that "to show injury-in-fact sufficient to establish Article III standing, Lilly must allege a factual basis to support its conclusion" that it had been damaged by defendants' alleged wrongdoing. *See generally Eli Lilly & Co. v. Mochi Health Corp.*, Case No. 25-cv-03534, 2025 WL 2998166 (N.D. Cal. Oct. 24, 2025) ("*Mochi*"). The Court noted that Lilly alleged harm to consumers—which was insufficient to constitute an injury in fact to **Lilly**—and otherwise failed "to allege facts that plausibly support an inference of reputational harm, and thus, an inference of injury," necessitating dismissal. *Id.* at *3-4. So too is the Amended Complaint here completely devoid of a "factual basis to support" harm to Novo sufficient to plausibly allege Article III standing.

Recognizing, as it should, that the original Complaint was due to be dismissed for lack of standing, Novo filed its Amended Complaint on November 12, 2025. Like its predecessor, the Amended Complaint does not articulate any facts demonstrating Novo has experienced actual injury much less allegations connecting each claim to any such injury. At the most basic step of the Article III analysis, the Amended Complaint is plainly deficient. Because Novo has not elucidated an injury in fact, the Court does not have subject matter jurisdiction over Novo's claims, requiring dismissal. *See Popa*, 153 F.4th at 791 n.5 (affirming dismissal of complaint which, as here, "includes no allegations plausibly linking these potential, generalized harms" to the alleged misconduct); *Mochi*, 2025 WL 2998166 at *4.

## C.    Novo Does Not Have Standing For Lanham Act Claims Against Fella Health

"In contrast to Article III standing, the Lanham Act does not allow all factually injured plaintiffs to recover." *Thermolife Int'l, LLC v. BPI Sports, LLC*, 2022 WL 612669, *2 (9th Cir. Mar. 2, 2022) ("*BPI Sports*") (citation omitted). "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). Standing under the Act imposes both a "zone of interests" and a "proximate cause" requirement. *Id.* at 129, 132. "[T]o allege a plausible commercial injury, a

plaintiff must allege some factual support for its allegations." *Am. Fitness,* 2019 WL 3840988 at \*7. As these requirements are "elements of the cause of action," Novo's Amended Complaint should be dismissed where it fails to assert sufficient allegations. *Lexmark*, 572 U.S. at 134 n.6; *BPI Sports*, 2022 WL 612669 at \*3 (affirming dismissal of Lanham Act claims for failure to satisfy proximate cause requirement).

Novo has not pled sufficient facts to place it within the "zone of interests" of the Lanham Act, which requires alleging "an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131-32. In its 244-paragraph complaint, Novo does not include a single ***factual*** allegation of injury to Novo's "commercial interest in reputation or sales." While Novo makes the conclusory assertion in reciting the elements of its cause of action, there are no facts alleged which plausibly lead to the conclusion that "Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation." Am. Compl. ¶ 220. Conclusory allegations that are "mere recitation[s] of the legal standard" do not satisfy Rule 9(b). *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Because Novo's allegations are insufficient to establish it is within the zone of interests, the complaint must be dismissed. *Lexmark*, 572 U.S. at 134, n.6.

Novo also has not sufficiently pled proximate cause, which requires showing "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. In *Lexmark*, the Supreme Court first addressed the "classic Lanham Act false advertising claim," where "one competitor directly injures another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch." *Id.* at 137.[3] The *Lexmark* Court held that even where the parties are ***not*** direct competitors, Plaintiff nonetheless pled sufficient facts to establish

---

[3] The Ninth Circuit's decision in *TrafficSchool.com, Inc. v. Edriver, Inc.* is arguably an example of the "classic" claim in Lanham Act jurisprudence prior to *Lexmark*. 653 F.3d 820 (9th Cir. 2011). Because it predates *Lexmark,* the court in *TrafficSchool* did not consider Lanham Act standing in the context of the two-part test established in 2014. In any event, after a trial on the merits, the Ninth Circuit affirmed the trial court's findings of fact which established the parties as direct competitors, recognizing "when plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury" sufficient to establish standing. *Id.* at 826-27. Notably, the Court made clear that "[w]e need not decide today whether our presumption of commercial injury is conclusive or rebuttable because defendants didn't point to any evidence . . . that might tend to rebut the presumption." *Id.* At the motion to dismiss stage, Novo must actually plead the facts it contends support its standing.

standing because there was "likely to be something very close to a 1:1 relationship between" the sales lost by one party and those gained by the other. *Id.* at 139.

In the absence of such a 1:1 relationship, it is difficult to "show that any false advertising necessarily injured [plaintiff's] business." *BPI Sports*, 2022 WL 612669 at *2 (lack of standing where plaintiff did not plead facts showing 1:1 relationship); *see also GovernmentGPT Inc. v. Axon Enter. Inc.*, 769 F. Supp. 3d 959, 986-88 (D. Ariz. 2025) (lack of standing where complaint alleged plaintiff planned to compete with defendant in the future); *Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, No. CV 20-9482, 2021 WL 4134841, *7-8 (C.D. Cal. Aug. 6, 2021) (seller of canned cocktails and seller of vodka were not competitors); *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715, 2020 WL 248164, *9 (D. Ariz. Jan. 16, 2020) (no standing where the parties sold different products in different markets to different customer segments). Even where the parties are found to compete, the plaintiff must still satisfy the requirement of pleading an injury to a commercial interest that flows from the defendant's alleged conduct. *See Eli Lilly & Co. v. Willow Health, Servs., Inc.*, No. 2:25-CV-03570, 2025 WL 2631620, *5-6 (C.D. Cal. Aug. 29, 2025) (hereinafter "*Willow Health*") (finding that parties were competitors, but dismissing Lanham Act claims for failure to adequately allege harm); *Charlotte's Web, Inc. v. Aaxll Supply Co. LLC*, Case No. 4:20-cv-02692, 2020 WL 6891876, *1 (N.D. Cal. Nov. 24, 2020) (Gonzalez Rogers, J.) (same).

This is neither the "classic" Lanham Act case, nor has Novo otherwise sufficiently alleged facts to establish proximate cause, and "the complaint must be dismissed." *Lexmark*, 574 U.S. at 134 n.6.

### 1.    Fella Health and Novo Are Not Competitors

Novo is a "pharmaceutical manufacturer[] that produce[s] medicines at scale" and sells those medicines to providers and patients, Am. Compl. ¶¶ 40, 50, while Fella Health is a "telehealth platform[] that provide[s] weight loss treatments." *id.* ¶ 29.  Fella Health does not produce medicines, but instead provides medical practice management and technology services to licensed healthcare providers, facilitating the connection of its members to licensed providers and when prescribed, obtaining medications for its members from pharmacies. Independent medical providers assess, diagnose, and treat patients, which may include prescribing medications such as compounded semaglutide. Separate licensed compounding pharmacies then fill those prescriptions as directed by the providers, whether that be with a

compounded semaglutide product or a different medication. The parties do not operate the same way and cannot be considered to compete with each other. *See, e.g.*, *BPI Sports*, 2022 WL 612669 at *2 (company that marketed and sold chemical compounds for others to use in manufacturing nutrition supplements did not compete with company that produced its own dietary supplements).

The "weight loss treatments" available through Fella Health include but are not limited to compounded semaglutide products. *See* Am. Compl. ¶ 13. Compounded medications are manufactured for an "identified individual patient based on the receipt of a valid prescription order or a notation, approved by the prescribing practitioner on the prescription order that a compounded product is necessary for the identified patient[.]" 21 U.S.C. § 353a(a); *see also* Am. Compl. ¶ 9. Drug products produced by compounding pharmacies are those "in which there is a change, made for an identified individual patient, which produces for that patient a significant difference, as determined by the prescribing practitioner, between the compounded drug and the comparable commercially available drug product." 21 U.S.C. § 353a(b)(2). Novo's semaglutide products are the commercially available drug products. Compl. ¶ 50. Thus, while Novo and Fella Health—in different ways—may provide access to products ***containing semaglutide***, they are not providing the same products to the same pool of consumers. It is illogical and unsupported by the Amended Complaint to suggest that a patient prescribed a form of compounded semaglutide by a provider would otherwise be a Novo consumer at all, let alone that such a patient would have chosen Novo absent some false advertising by Fella Health.[4] Novo and Fella Health do not compete as a matter of fact or law.

2.    <u>Novo Failed to Plead Commercial Injury Caused by Fella Health</u>

Novo has pled no *facts* allowing the Court to conclude Novo has been harmed financially. *See Willow Health*, 2025 WL 2631620 at *5-6. As Judge Birotte of the Central District of California ruled in

---

[4] In a recent case brought by Lilly against another telehealth company, the Court found that Lilly and Henry Meds competed because they "vie for the same dollars from the same consumer group" by selling tirzepatide-containing drugs. *Eli Lilly & Co. v. Adonis, Inc. d/b/a Henry Meds.*, No. 25-cv-03536, 2025 WL 2721684, *3 (N.D. Cal. Sept. 24, 2025) ("*Henry Meds*"). Respectfully, this holding is incorrect. The Court accepted without question Lilly's definition of the relevant market as the "tirzepatide market," rather than considering that Henry Meds, like Fella Health, offers patients access to a variety of weight loss treatments. Judge Tigar also disregarded the fact that a patient taking a compounded product was prescribed that compounded drug because it "produces for that patient a significant difference" from Lilly's commercially available drug. Despite Novo's unsupported and conclusory assertion Fella Health and Novo do not "serve the same discrete pool of customers." Am. Compl. ¶ 3.

dismissing a substantially similar Complaint: "Plaintiff has failed to plead a single lost sale as a result of Defendants' alleged false advertising. Plaintiff does not allege whether sales of its [GLP-1] medications decreased, when that decrease occurred, or to whom Plaintiff lost sales. Further, Plaintiff has failed to allege a single instance, either via survey or testimonial evidence, where a consumer decided to select a compounded [GLP-1] provided by Defendant instead of Plaintiff's products because of any alleged false advertisements made by Defendant." *Id.* at *5. The same is true here. Novo failed to plead a single lost sale as a result of Fella Health's alleged false advertising, whether sales of its semaglutide medications decreased, when that decrease occurred, or to whom it lost sales.

Furthermore, the Amended Complaint, while doubling down on cherry picked comments on an anonymous public forum, does not plausibly allege facts tying actual, concrete commercial injury to false advertising by Fella Health. *See e.g.* Am. Compl. ¶¶ 168-212. For example, and not surprisingly, the Amended Complaint is devoid of even a single example of a consumer who chose compounded semaglutide provided by Fella Health instead of Novo's products because of false advertisements made by Fella Health. This would be difficult to allege because patients ***do not*** have independent choice when it comes to compounded medications. Fella Health's members receiving compounded semaglutide were prescribed that drug only where a physician found that the compounded version "produces for that patient a significant difference, as determined by the prescribing practitioner, between the compounded drug and the comparable commercially available drug product." 21 U.S.C. § 353a(b)(2). Novo "ignores the simple fact that regardless of what an advertisement says or what a consumer wants to buy, obtaining a prescription medication requires a physician to prescribe it," undermining any claim of proximate cause under the Lanham Act. *See Willow Health,* 2025 WL 2631620 at *6.

What is more, the weight loss medication market is a crowded field with numerous competing products. *BPI Sports*, 2022 WL 612669 at *2. Providers may ultimately choose to prescribe weight management medications to patients seeking weight loss treatment through Fella Health's telehealth platform, including medications like compounded tirzepatide that Novo does not manufacture or sell. Therefore, even if the consumer pool was the same (and it is not), the mere fact that a patient was "directed" by Fella Health's statements to use Fella Health's telehealth platform to address weight loss treatment does not equate to a lost sale to Novo, as it may also be the case that a provider ultimately treated

such a patient using a non-semaglutide medication, or without medication at all.[5] Novo has not pled facts supporting the inferential leaps it asks the Court to make, and therefore it has not alleged economic harm. *See BPI Sports*, 2022 WL 612669 at *2; *HomeLight, Inc. v. Shkipin*, 694 F. Supp. 3d 1242, 1254-55 (N.D. Cal. 2023) (no standing, noting to establish lost sales, plaintiff "would need to show how deceptive statements . . . necessarily caused" consumers not to purchase).

### 3. Novo Failed to Plead Harm to Its Reputation

Unable to point to any lost sales or comparable commercial injury, Novo turns to supposed harm to its "business reputation." Am. Compl. ¶ 221. When injury to reputation is alleged as the basis for Lanham Act standing, such "reputational injury must still be of a commercial nature and clearly flow from the disparagement." *Maffick LLC v. Facebook, Inc.*, No. 20-cv-05222, 2021 WL 1893074, *4 (N.D. Cal. May 11, 2021) (holding plaintiff's conclusory allegation that reputational injury leads to economic damage "is ipse dixit and not the pleading of facts" as required to confer Lanham Act standing). Novo bears the burden of establishing it has suffered actual commercial injury directly caused by Fella Health's allegedly false or deceptive advertising. Mere speculation is not enough. *See, e.g.*, *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 162 (2d Cir. 2007) (there must be "some indication of actual injury and causation" to ensure injury is not speculative and satisfy Lanham Act standing requirements); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1126 (S.D.N.Y. 1993) (speculation of potential increased profits but for alleged false advertising insufficient for standing under the Lanham Act).

The Amended Complaint fails to elucidate how any statement made by Fella Health led to financial injury to Novo's reputation. In considering nearly identical allegations, Judge Birotte concluded that the plaintiff fell short of the pleading requirements and did not set forth a plausible mechanism by which "Defendant's advertisements could harm Plaintiff's business." *Willow Health*, 2025 WL 2631620 at *6.; *see also Am. Fitness*, 2019 WL 3840988 at *10 (granting motion to dismiss for lack of statutory standing); *GovernmentGPT Inc.*, 769 F. Supp. 3d at 988 ("It is not enough to allege that customers may have chosen Axon over other unnamed competitors or GovGPT.").

---

[5] Novo's reference to a "decline in its market share" is unsupported by facts showing an actual decline, much less facts tying such a decline to Fella Health's actions. Am. Compl. ¶ 21. Those facts, if they exist, are best known to Novo and should have been plead with specificity in the Amended Complaint. In the absence of such factual allegations, the supposed decline in Novo's market share is conclusory at best.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4. Novo Cannot Rely on Harm to Customers to Show Standing

Because Novo cannot point to any harm it suffered from Fella Health's purported false advertising, it instead attempts to step in to protect the interests of consumers. Novo's claim that it brings this Complaint "in the interest of public safety" does not give it standing in this Court. Am. Compl. ¶ 1. Novo's efforts to paint itself as a good Samaritan are unavailing for standing purposes, as it cannot sue on behalf of individual consumers. *See Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081-83 (9th Cir. 1987) (citing *McMichael v. Cnty. of Napa*, 709 F.2d 1268, 1270 (9th Cir. 1983)). Plaintiffs are required to "assert [their] own rights, rather than rely on the rights or interests of third parties[.]" *Id.* at 1081.

Novo's allegations are insufficient to establish Lanham Act standing, i.e. fail to meet the "zone of interest" and "proximate-cause" requirements, and therefore the First Cause of Action "must be dismissed." *Lexmark,* 572 U.S. at 134 n.6.

### D. Novo Does Not Have Standing to Assert Its False Advertising Claim Under the UCL

Novo also lacks standing for its false advertising claim under the UCL, which is fatal to its Second Cause of Action. In fact, Novo's burden to establish standing to pursue claims under the UCL/FAL is more onerous than both the Article III requirements and the already heightened requirements under the Lanham Act. *See Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1196 (N.D. Cal. 2015) (UCL standing is "substantially narrower than federal standing under [A]rticle III"); *Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-cv-05638, 2020 WL 6826487, *5 (N.D. Cal. June 4, 2020) ("standing under the UCL and FAL is more exacting" than either Lanham Act or Article III standing requirements). By its express terms, the UCL provides that "[a]ctions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction . . . ***by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition***." Cal. Bus. & Prof. Code § 17204 (emphasis added).

"To meet this standard, a plaintiff bringing suit under any prong of the UCL must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.'" *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011). As discussed above, Novo has not met any of these requirements. It has not established an injury to a legally protected interest that is anything more than conclusory. In its Second Cause of Action, Novo

---

alleges without any factual support that "Plaintiffs have suffered injury as a result of these violations because Fella Health's false and misleading advertising has diverted business from Plaintiffs, causing lost sales and profits, and has damaged their goodwill with former, existing and potential customers." Am. Compl. ¶ 228. Aside from this conclusory allegation, there is nothing pled in the Amended Complaint to demonstrate that Novo has experienced any economic harm whatsoever, let alone an injury that can be plausibly traced to Defendants' actions. Plaintiffs' conclusory allegations of lost sales and damage to goodwill need not be credited, and do not serve to establish standing under any UCL theory of liability. *See Iqbal*, 556 U.S. at 678; *Willow Health*, 2025 WL 2631620 at *7 (Lilly failed to allege lost money or property as a result of unfair competition, even where it alleged "loss of goodwill" in conclusory fashion).

As Novo does not have standing under the Lanham Act or the UCL/FAL for its false advertising claims against Fella Health, Novo's First and Second Causes of Action should be dismissed.

### E.    Novo Has No Standing to Bring Its UCL Claim for Corporate Practice of Medicine

Novo's claim for corporate practice of medicine (Third Cause of Action), brought under the "unlawful" prong of the UCL, also fails for lack of standing. Like any other UCL claim, Novo must adequately allege injury in fact—i.e., loss of money or property—caused by the supposed UCL violation. *Kwikset*, 51 Cal. 4th at 322. "When a UCL action is based on an unlawful business practice . . . there must be a causal connection between the harm suffered and the unlawful business activity." *Daro v. Superior Ct.*, 151 Cal. App. 4th 1079, 1099 (2007).

Novo's allegations of harm again come down to a single paragraph in the cause of action and are unsupported by any facts in the body of the Complaint. Novo claims that as a result of "Fella Health's deceptive and unlawful practices, Fella Health has obtained an unfair and illegal business advantage, thereby benefitting and profiting from sales it made as a result of goodwill associated with Novo Nordisk's semaglutide medicines," and that Novo has suffered "monetary damages that can be measured and quantified as well as discernible competitive injury by the loss of goodwill." *See* Am. Compl. ¶ 238.[6] As with its UCL false advertising claim, Novo pleads no facts to allow the Court to conclude that Novo has experienced any financial harm. Merely stating Fella Health may have profited from its sales in no way

---

[6] Novo does not allege, conclusorily or otherwise, that either Fella Medical Florida or Fella Medical California caused it any harm at all.

suggests that such sales injured Novo. With respect to harm to goodwill, the Amended Complaint does not articulate how the alleged unauthorized practice of medicine had an impact on Novo's goodwill. It similarly fails to elucidate how any loss of goodwill had a financial effect on Novo's business. In short, Novo has not provided the Court with sufficient allegations to infer Novo experienced any financial harm stemming from the claimed CPOM violations. Novo therefore lacks standing to bring the CPOM claim under the UCL and Cause of Action Three must be dismissed as to all Defendants.

**F.    Novo Fails to State a Claim for False Advertising**

1.    Novo Does Not Adequately Plead False Advertising

Novo asserts separate causes of action under the Lanham Act and the FAL against Fella Health (only) based on the same alleged false advertisements.[7] A false advertising claim requires establishing that (1) the defendant made a false statement of fact about its own or another's product; (2) the statement actually deceived or has the tendency to deceive; (3) the deception is material—i.e., likely to influence a purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement. *See Intuit Inc. v. HRB Tax Grp., Inc.*, No. 24-cv-00253, 2025 WL 1168897, *5 (N.D. Cal. Apr. 22, 2025); *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762, 2014 WL 572290, *3 (N.D. Cal. Feb. 11, 2014) (false advertising claims under FAL are "substantially congruent to claims made under the Lanham Act"); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (using the same analysis for claims under Lanham Act and UCL). A plaintiff must also plead that the alleged false representations are "likely to deceive a reasonable consumer." *Shaker v. Nature's Path Foods, Inc.*, No. 13-1138, 2013 WL 672802, *1 (C.D. Cal. Dec. 16, 2013).

Novo recognizes it cannot attack the compounding process itself. Instead, it attacks statements made by Fella Health regarding compounded medications. Novo's false advertising claims are premised on statements—set forth beginning at paragraph 174 in the Complaint—that broadly fit into two

---

[7] Fella Health disputes the substance of Novo's allegations with respect to its false advertising claim and will present those disputes at the appropriate time. Notably, Novo asserts throughout the Amended Complaint that Fella Health diverts patients away from Novo's branded semaglutide medications, and that "consumers will never be recommended those medications by a Fella Medical Groups' physician." *See, e.g.*, Am. Compl. ¶ 167. In fact, Fella Health providers have not only recommended Novo's semaglutide medications to patients, but written prescriptions for those medications.

categories: (1) so-called "personalized nature" claims and (2) "quality, safety and efficacy"[8] claims. None of the statements identified are actionable under either the Lanham Act or UCL/FAL.[9]

> a.    *The "Personalized Nature" Claims Are Attacks on Compounding Generally*

Novo claims that Fella Health deceived patients by using phrases such as "tailored treatment" and "personalized treatment plans." *See, e.g.*, Am. Compl. ¶ 174-75. Novo asks the Court to conclude that these statements equate to a "message to consumers that the medication inside each vial of its compounded semaglutide contains a unique combination of ingredients that is compounded specifically to each patient *after* an assessment of each consumer's particularized needs." *Id.* at ¶ 176. The statements identified in the Amended Complaint say no such thing, as there is no mention of "a unique combination of ingredients." In fact, no statement identified guarantees that a member will be prescribed any medication at all. *See* Am. Compl. ¶ 175 ("A Fella provider *may* prescribe a compounded medication if they determine it's an appropriate part of your treatment plan.")(emphasis added).

Moreover, as alleged, Fella Health markets and sells, among other products, compounded semaglutide products produced by FDA-registered and/or state licensed compounding pharmacies governed by the FDCA. *See* 21 U.S.C. § 353a(a). "Personalization does not mean that every compounded medication must be different for every patient, . . . when Defendant states that a compounded tirzepatide 'is a custom-prepared version of the drug, mixed specifically for a patient by a compounding pharmacy', such a statement is true." *Willow Health,* 2025 WL 2631620 at *10. Tailoring is achieved through the

---

[8] The Amended Complaint purports to break this category into three separate sections. See Am. Compl. ¶ 169. All suffer from the same infirmities.

[9] Novo's allegations that post-litigation revisions to Fella Health's website constitute an admission that the statements were false and misleading under the Lanham Act and California law is improper for consideration by this Court. Am. Compl. ¶¶ 170-173.  Parties may not introduce evidence of subsequent remedial measures to prove culpable conduct. FRE 407. In the context of Lanham Act and UCL false advertising claims, post-complaint revisions to published information, such as labels, marketing materials, and websites, are considered subsequent remedial measures inadmissible under Fed. R. Evid. 407. *See K & N Eng'g, Inc. v. Spectre Performance*, No. EDCV 09-01900-VAP, 2011 WL 4387094, at *5, n. 26 (C.D. Cal. Sept. 20 2011) (excluding evidence of defendant's post-complaint changes at summary judgment); *Strategic Partners, Inc. v. FIGS, Inc.*, No. 19-cv-02286, 2022 WL 18399950, *5 (C.D. Cal. Sept. 26, 2022) (excluding evidence of removal of contested claims from website to the extent offered as admission of fault). While Defendants dispute that any of its advertising was false or misleading, or otherwise in violation of the law, the Court should disregard Novo's improper claims because no possible evidence in support of the allegation would be admissible.

1    prescription process whereby physicians choose and prescribe the most appropriate treatment for a patient.

2    For these reasons, Fella Health's statements that the personalized treatment plans, which may include

3    compounded medication, are individualized are not false.

4        To the extent Novo contends that the compounded products do not comply with the FDCA and are

5    not adequately personalized, that claim is not relevant to Fella Health. Fella Health is a telehealth company

6    and does not compound medications but instead purchases product from licensed and/or FDA registered

7    compounding pharmacies on behalf of its members who receive a prescription for such products. Despite

8    expending a considerable amount of time focusing on its opinions about the potential risks posed by

9    compounding, Novo "does not base its claim on . . . alleged violation of section 353b, no doubt because

10   the statute is part of the [FDCA]. This Act includes a prohibition on private enforcement: all proceedings

11   to enforce or restrain violations of the FDCA must be by and in the name of the United States, except for

12   certain proceedings by state governments." *Nexus Pharms.*, 48 F.4th at 1044 (citiation omitted). Therefore,

13   any claim that the compounding pharmacies—which are independent from Fella Health—did not comply

14   with the FDCA would be preempted. *Id.*

15       b.    *Allegations of Implied FDA Approval Are Preempted*

16       As the parties agree, "compounded drugs are not FDA-approved." *See* Am. Compl. ¶ 62. This is a

17   red herring, as Congress has set out a separate process by which compounded drugs may be made and

18   sold. *See* 21 U.S.C. §§ 353a(a), 353b(a). "Congress does not subject compounded drugs to the approval

19   process it uses for new drugs because valid compounding has traditionally been seen as an appropriate

20   means of customizing existing drugs to the needs of individual patients." *Nexus Pharms.*, 48 F.4th at 1042.

21   Although Novo spends several pages discussing the FDA's positions on compounded drugs (*see* Am.

22   Compl. at ¶¶ 62-98)[10], it cannot and does not allege that FDA has declared it unlawful to compound

23   semaglutide, or to ultimately market and sell compounded semaglutide. It is of no consequence that Novo

24   would prefer a change in the law, as the law allows providers to prescribe and compounding pharmacies

25   to produce compounded semaglutide.

26       Turning then to the self-styled false advertising claim, the semaglutide products are undisputedly

27

28   ───────────────────

[10] These paragraphs refer to documents and statements made by FDA and other U.S. and foreign government officials and industry groups. None of these documents identify Fella Health or otherwise can be read to address Fella Health's business.

compounded and are not subject to the approval process of the FDA. To avoid running headfirst into preemption for a false advertising claim based on misrepresentation of FDA approval, Novo must identify some statement by Fella Health which inaccurately claims that the compounded semaglutide products prescribed to its members are FDA approved. *See Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 917 (N.D. Cal. 2021). "[A]llowing a Lanham Act claim to proceed where a plaintiff does not point to any statement or representation in the defendants' advertising declaring FDA review or approval would, in effect, allow the plaintiff to use the Lanham Act as a vehicle to enforce the [FDCA]." *Id.* (granting motion to dismiss false advertising claim based on implied FDA approval).

Here, Novo has not identified any instance of Fella Health representing to customers that the compounded semaglutide products prescribed to Fella Health members are FDA approved. In fact, the advertisements Novo includes say just the opposite. *See, e.g.*, Am. Compl. ¶ 175 ("While **compounded medications are not FDA-approved**, they are regulated at the state and federal level and must meet important safety and quality requirements.") (emphasis added). Novo would have the Court infer that statements that "semaglutide" is FDA-approved implies a claim of FDA approval for **compounded** semaglutide products. *See e.g.* Am. Compl. ¶ 180 ("Fella Health has claimed **or implied**…" that compounded semaglutide is FDA approved or has been evaluated by FDA) (emphasis added). In the absence of an explicit statement to that effect, entertaining this inference would "allow the Plaintiff to use the Lanham Act as a vehicle to enforce the [FDCA]" and must be rejected. *Id.* at *9. Novo's allegations with respect to supposed claims of FDA approval are implied FDA approval claims that are preempted and must be dismissed.

                              *c.*     *Novo's Claims of Falsity Are Improperly Based on Lack of Substantiation*

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication[.]" *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). A plaintiff cannot merely plead that "a defendant's statement lacked support," but must "particularly allege falsity of the challenged statements." *Strategic Partners, Inc.*, 2019 WL 12435672 at *6. "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Southland Sod Farms*, 108 F.3d at 1139.

Novo's theory about why the challenged statements are false is, at its core, that Fella Health lacks

substantiation for its supposed quality, safety and efficacy claims about compounded semaglutide. Novo alleges that Fella Health implies to consumers that compounded semaglutide products have been subject to clinical trials when they have not. *See e.g.*, Am. Compl. ¶¶ 205-10. The crux of Novo's false advertising claim is, therefore, that Fella Health's statements about the safety and efficacy of compounded semaglutide are unsupported by clinical trials. This so-called "lack of substantiation" theory has been roundly rejected in this Circuit. "[U]nder the heightened Rule 9(b) pleading standard, a plaintiff may not sustain false advertising claims based solely on lack of substantiation grounds." *Kurin, Inc. v. ICU Med., Inc.*, No. 24-CV-00564, 2024 WL 54166772, *7 (C.D. Cal. Nov. 8, 2024); *Strategic Partners*, 2019 WL 12435672 at *6 (it is not enough to claim that "a defendant's statement lacked support"; instead, a plaintiff must "particularly allege falsity of the challenged statements"); *Willow Health*, 2025 WL 2631620 at *9 ("California law does not provide for a private cause of action to enforce the substantiation requirements of California's unfair competition laws."); *see also, Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) (under California law, private plaintiffs cannot demand substantiation for advertising claims).

Here, Novo fails to allege why Fella Health's statements are false. Instead, Novo summarily claims that the compounded semaglutide offered by Fella Health have not undergone independent clinical trials. Because this argument relies on alleged lack of support for Fella Health's advertising statements, it must fail. *See Henry Meds.*, 2025 WL 2721684 at *7 (dismissing Lilly's false advertising claim that compounded tirzepatide drugs were "safe and effective" because "a plaintiff must particularly allege falsity of the challenged statements, and not just that a defendant's statement lacked support").

### d.    Novo Fails to Plead Customer Confusion

Novo must adequately plead that consumers were actually misled or likely to be misled by Fella Health's statements, and that any misleading statements were material to a consumer's purchasing decision. *See Shaker*, 2013 WL 6729802 at *4-5; *Intuit*, 2025 WL 1168897 at *8 (dismissing Lanham Act claim where plaintiff failed to allege that the deception was material to customer purchasing decisions).

Novo mischaracterizes snippets of discussions on the anonymous social media forum Reddit and asks the Court to draw conclusions that are not supported by those discussions. For example, Novo asks the Court to find consumer confusion by claiming that Fella Health had "represented [the compounded

products] as being effectively the same as Novo Nordisk's FDA-approved medicines." Am. Compl. ¶ 198. The cited Reddit discussion says no such thing. It makes no reference whatsoever to any Fella Health marketing, and in fact demonstrates that the customer knew they were receiving a product that was different than Novo's product. *Id.* The allegations that follow suggest that consumers were apparently dissatisfied with the results of their compounded semaglutide experience for varying reasons. They do not however, as Novo suggests, make any reference to Fella Health advertising and certainly do not, as Novo alleges, claim that those customers were "enticed away from" Novo products by Fella Health's "false statements." *Id.* 203. There is no factual support alleged for such a leap.

Even to the extent the Court is convinced that the statements at issue are misleading, Novo has not attempted to plead that such statements were material to the purchasing decisions of a reasonable patient. *See, e.g.*, *Intuit*, 2025 WL 1168897 at *8. Novo must plead that had consumers understood that compounded semaglutide is not personalized (as alleged), is not FDA-approved, or was not subject to clinical trials, their decision to use compounded semaglutide would be impacted. *See id*. This is complicated by the fact that a patient cannot independently make the decision to "purchase" compounded semaglutide. Instead, a licensed provider assesses the patient and prescribes an appropriate treatment, which in some cases is compounded semaglutide. There can be no material impact on purchasing patterns where there is the intervening step of the provider's independent medical judgment. *See Willow Health,* 2025 WL 2631620 at *6. Regardless, the Complaint is devoid of facts to support that any of the alleged false statements were a factor in Fella Health members' decision-making with respect to which weight loss treatment was appropriate for them, and it therefore lacks an essential element of a false advertising claim.

Moreover, to the extent that any of Novo's allegations suggest consumer confusion, the Amended Complaint makes no effort to connect the alleged consumer confusion with any harm to ***Novo***. Without a causal connection, there can be no viable claim of harm caused by Fella Health.

> e.    *Allegations that Compounded Products Do Not Contain Semaglutide Are Preempted*

Novo insinuates that the compounded semaglutide products Fella Health makes available do not actually contain semaglutide. *See, e.g.*, Am. Compl. ¶ 12 (compounded drug products "***purport*** to contain

semaglutide"), 160 (discussing the "'semaglutide' *allegedly* in Fella's" products) (emphases added). Novo cannot bring a cause of action, however styled, challenging the requirements imposed on compounding pharmacies by the FDCA. Any such claim is preempted. *See Nexus*, 48 F.4th at 1042.

### G.    Novo's UCL Unlawful/Corporate Practice of Medicine Claim Fails

The Third Cause of Action alleges that Fella Health, Fella Medical Florida and Fella Medical California violated the UCL by engaging in the unlicensed practice of medicine in violation of the California Medical Practice Act ("MPA").[11] Novo claims that Defendants violated Cal. Bus. & Prof. Code §§ 2400 and 2502, and therefore should be held liable to Novo under the UCL for those violations. Fella Health vigorously disputes the substance of Novo's allegations with respect to its CPOM claim and will present those disputes at the appropriate time. Notably, the only specific allegation against the provider entities claims that those defendants "aided and abetted Fella Health's unlawful corporate practice of medicine by following those directives." Am. Compl. ¶ 236. There are no facts pled anywhere in the Amended Complaint to support this conclusion.

Because Novo does not have standing under the UCL, the Court need go no further in analyzing this claim. However, even if Novo had standing, this Court should reject Novo's request that it step into the shoes of the California Medical Board and dictate the practice of medicine both in California and in other jurisdictions where providers who treat Fella Health members are licensed to do so. Moreover, even if the Court were inclined to take on the responsibility to oversee the practice of medicine in this way, Novo has failed to adequately plead a UCL violation premised on a violation of the MPA in the first place.

### 1.    There is a Comprehensive Administrative Regulatory Scheme Under the MPA that Bars a Claim Under the UCL

The Complaint makes clear that Novo's motivation underlying its claims is not ensuring the safety of patients but rather to stop physicians from prescribing compounded drugs altogether. The Court should not allow Novo to reduce statutorily permitted options for medication under the guise of concern for

---

[11] Fella Medical Florida is a Florida professional corporation. Unlike California, Florida does not prohibit corporate practice of medicine, and in fact the Florida Board of Medicine has explicitly confirmed that "Florida statutes [do not] prohibit a Florida licensed physician employed by a corporation from practicing in Florida under such an arrangement." State of Florida Board of Medicine, *Final Order In re: Petition for Declaratory Statement*, (filed Sept. 16, 2003), *available at* https://www.floridahealth.gov/licensing-andregulation/declaratory/_documents/medical/doh-03-1018.pdf.

patients and should leave the protection of patients to the Medical Board, and the regulation of compounding pharmaceuticals to state boards of pharmacy and the FDA, each of whom has the relevant technical expertise and investigative powers.

Although the UCL allows complainants to borrow from other statutes to form the basis of a claim for unlawful competition, it does not authorize such claims where the underlying statute, like the MPA, contains a "comprehensive administrative scheme" with no private right of action. *See, e.g.*, *Farmers Ins. Exch. v. Superior Ct.*, 137 Cal. App. 4th 842, 855-56 (2006) (UCL claim precluded where there was not intended to be a private right of action under Proposition 103 regulating insurance rates); *Grzeslo v. Phillips*, No. 1:24-cv-00615, 2024 WL 4333336, *3 (E.D. Cal. Sept. 27, 2024) (dismissing claim because "there is no private right of action for the unauthorized practice of medicine"). Here, the California Medical Board is vested with the authority to investigate complaints of unauthorized practice of medicine. *Grzeslo*, 2024 WL 4333336 at *3 (dismissing claim for the unauthorized practice of medicine); *see also Israel v. Carter*, No. 2:21-cv-1267, 2022 WL 874941, *4 (E.D. Cal. Mar. 24, 2022) (same). Where that is the case, allowing for private plaintiffs to seek judicial review would usurp and make redundant the administrative review provisions of the statute. *See Farmers Ins. Exch.*, 137 Cal. App. 4th at 855-56.

It is sensible that a claim of unauthorized practice of medicine should be left to the Medical Board, not the courts, to adjudicate. Novo alleges that the Defendants violated the MPA by (1) allowing non-physicians to offer medical advice, (*see, e.g.*, Am. Compl. ¶¶ 118-121), (2) Fella Health's exertion of undue ownership and control over providers (*see id.* ¶¶ 122-164) and (3) manipulating patient prescriptions without good faith examination or medical indication, (*see id.* ¶¶ 165-167).

Novo further asks this Court to issue broad and sweeping injunctive orders governing not only the medical practice of providers throughout California, but in any jurisdiction where a provider may treat a Fella Health member. *Id.* ¶¶ 238-239. This is akin to *Alvarado v. Selma Convalescent Hosp.*, where the court abstained because intervening would have involved long-term monitoring and statewide injunctions. 153 Cal. App. 4th 1292, 1298 (2007). To enforce such an injunction, the Court (not the Medical Board) would not only be required to determine whether Defendants engaged in the unlicensed practice of medicine, but would also need to oversee the medical practice of ***any*** provider working with Defendants to ensure compliance. This could require enforcing a nationwide injunction, as Fella Health members and

their providers are located across the country, including in states (like Florida) that do not themselves impose such limitations. Such an extraordinary request is precisely why the Court should decline Novo's attempt to shoehorn a private action under the MPA into a UCL claim.

2.    Novo Fails to State a Claim That Defendants Violated the MPA

Defendants "cannot be liable" under the unlawful prong of the UCL "without having violated another law." *See Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1033 (N.D. Cal. 2010 (quoting *Ingels v. Westwood One Broadcasting, Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005)). For Novo to make out its claim, it must show that Defendants violated the MPA in some way. To determine liability, the Court will necessarily have to step into the role of the Medical Board to make substantive determinations of whether any alleged actions by *each* Defendant violated the underlying statute. As pled, none of Novo's allegations support such a finding.

a.    *Allegations of Lack of Individualized Prescriptions for Compounded Semaglutide are Preempted*

Novo alleges that Fella Health "changed patient prescriptions *en masse*, disregarding the individualized clinical assessment by a licensed physician required under California law." *See* Am. Compl. ¶141. This insinuates that members received products that were not adequately individualized to them, as required by the FDCA, and runs directly into the preemption doctrine. Private enforcement of the FDCA is prohibited and should not be countenanced. *See Nexus,* 48 F.4th at 1044.

b.    *Allegations of "Undue Influence and Control" Are Unsupported*

Novo claims that Fella Health exerted "undue influence and control" yet fails to identify a single instance where Fella Health directed any telehealth physician to do anything, much less to act in violation of California CPOM restrictions. *See* Am. Compl. at Section II.A-B. Novo asserts that Richie Cartwright, who is not a medical provider, is a corporate officer of both medical practices. *See id.* ¶ 120. According to Novo, an individual who is not a licensed medical provider is "prohibited from owning or controlling medical practices." *See id.* ¶ 121. But the Amended Complaint sets forth no allegations to suggest that Mr. Cartwright actually did own or control the provider entities, or how he supposedly exerted such control over providers. What is more, Novo points to nothing to support a conclusion that an unlicensed person serving as one of multiple corporate officers of a medical practice is inherently unlawful. Without further

allegations of undue control by Mr. Cartwright, his mere role in Fella Medical Florida and/or Fella Medical California is not unlawful and cannot serve as the basis for a UCL claim.

   *c.*  *Novo's Speculative and Conclusory Allegations Regarding Social Media Comments Are Insufficient to State a Claim*

  Novo relies on social media posts to support its conclusion that Fella Health exerted "control and undue influence" over providers' practice of medicine by "giving patients medical advice from non-physician employees." *See* Am Compl. at Section II.B, ¶ 122. The Complaint relies exclusively on comments and posts that Novo suggests were made by Fella Health members and employees on the anonymous social media site Reddit. These statements are of dubious source and veracity, as there is no way to test whether the comments are made by actual Fella Health members, whether their reported experiences are legitimate, or whether Novo's interpretation of those comments are accurate.

  Even giving these posts full credit, the Amended Complaint again fails to identify anything unlawful about Fella Health's alleged behavior. The Amended Complaint states it is not possible to meet the necessary standard of care and conduct a proper prior examination "where company employees without medical licenses direct medical care[.]" *See* Compl. ¶ 166. Despite the litany of comments that Novo attempts to characterize as offering medical advice, Novo offers no factual allegations to support the conclusion that a licensed medical provider did not in all cases make the ultimate decision to prescribe a specific medication to Fella Health members. Novo does not assert that any individual provider prescribed a medication they would not have otherwise but for some unpled "undue influence" by a non-physician as a result of the Reddit posts. The Amended Complaint similarly does not aver that any provider felt pressured to treat patients in a certain way. Further, there are no allegations explaining why any doctor's prescription was based on an inappropriate medical examination.

  Instead, Novo attempts to paint comments on Reddit as "prescriptions," suggesting that a comment that, for example, states "if you would ever like to discuss [switching from semaglutide to tirzepatide], please reach out to me" equates to a prescription. *See, e.g.*, Am. Compl. ¶ 132. Novo asks the Court to infer that such a comment means that this commenter both was in fact switched from one drug to another, and that Fella Health did not refer that member to a licensed provider who made the decision to switch the prescription. But nowhere in the Amended Complaint does Novo support such an inference. There are

no facts pled to support that the social media postings constitute unlawful acts giving rise to a CPOM claim.

Novo's insinuations of undefined "control" resulting from social media comments fall well short of similar claims that have survived motions to dismiss. *See e.g., Am. Acad. of Emergency Med. Physician Grp., Inc. v. Envision Healthcare Corp.*, No. 22-cv-00421, 2022 WL 2037950, *4-5 (N.D. Cal. May 27, 2022) (denying motion to dismiss CPOM claim under the UCL where plaintiff alleged, among other things, non-providers controlled hiring, firing, and compensation decisions for physicians; set physician work schedule and conditions; negotiated with third-party payors and insurers without physician involvement; held the rights to proceeds of medical billings; made coding and billing decisions without physicians' knowledge; and required physicians to sign non-compete agreements). Novo has pled no such specific allegations of control.

3.    <u>Novo Cannot Assert Claims Founded on Statements Made or Actions Taken Regarding Tirzepatide, a Medication it Does Not Manufacture or Sell</u>

Many of the unauthenticated Reddit posts that Novo relies heavily on relate not to semaglutide, the product Novo manufactures and sells, but to tirzepatide, the branded version of which is manufactured and sold by Lilly. *See, e.g., id.* ¶¶ 150-164 (discussing Fella Health's alleged switching of patients' compounded tirzepatide prescriptions *en masse*). Indeed, the Amended Complaint doubles down on blurring the lines between Novo and Lilly's products by defining Fella Health's so-called "Unapproved Compounded Drugs" to include "'personalized' versions of the compounded drug products that purport to contain semaglutide *or tirzepatide*, but that have not been approved by FDA[.]" *See id.* ¶ 13 (emphasis added). But statements concerning tirzepatide, which is not a product Novo manufactures or sells, cannot form the basis for ***Novo's*** claims against Defendants, as Novo may only "assert its own rights, rather than rely on the rights or interests of third parties[.]" *See Hong Kong Supermarket*, 830 F.2d at 1081. By basing its claims not only on its own products, but also on its competitor's products, Novo not only attempts to improperly step into the shoes of consumers, but it also tries to vindicate the entire branded GLP-1 market. The allegations that reference tirzepatide products must be disregarded.

**H.    Novo Does Not Properly Plead Unfair Competition in Violation of Common Law**

The Complaint also does not state a claim for the common law tort of unfair competition and the

Fourth Cause of Action is due to be dismissed. With respect to this claim, the Complaint merely states in conclusory fashion that the "above-described acts of Defendants constitute common law unfair competition." *See* Am. Compl. ¶ 241. This is plainly insufficient to meet any pleading standard, let alone the heightened standard that underlies claims sounding in fraud. *See Twombly*, 550 U.S. at 555. It can hardly be said that incorporating the entirety of a 244-paragraph complaint by reference without some specificity as to the particular conduct underlying the claim constitutes "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (alteration in original) (citation omitted) In fact, where a party pleads multiple counts but "does not identify which specific facts fit that Count in that very Count, but instead rel[ies] on a blanket incorporate clause that incorporates all the statement of facts," that is impermissible shotgun pleading that by definition violates Rule 8. *See, In re Mortgages Ltd.*, No. 08-bk-07465, 2013 WL 1336830, at *12 (D. Ariz. Mar. 29, 2013); *see also Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 769 n.4 (E.D. Cal. 2021) ("The wholesale incorporation by reference of all prior paragraphs, when not all prior paragraphs are relevant and intended to support a cause of action, is improper."). "The end result is that the Plaintiffs hope that the Court will engage in a treasure hunt to find which facts line up with which Counts, an unduly burdensome task this Court does well to avoid." *In re Mortgages Ltd.*, 2013 WL 1336830 at *15. Under these circumstances, the common law unfair competition claim must be dismissed for failure to "provide the fair notice necessary" under the pleading requirements. *Id.*

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court issue an order dismissing Plaintiffs' Complaint in its entirety, with prejudice.

DATED: December 12, 2025

**FOLEY & LARDNER LLP**
KATY KOSKI
LEA GULOTTA JAMES
AMANI KMEID
MICAH A. CHAVIN

*/s/ Micah A. Chavin*
Micah A. Chavin

Micah A. Chavin (CA Bar No. 313634)
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Tel: (415) 438-6469
micah.chavin@foley.com

Katy Koski (*pro hac vice* pending)
Lea Gulotta James (*pro hac vice* pending)
Amani Kmeid (*pro hac vice* pending)
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Tel.: (617)794-8014
kkoski@foley.com
ljames@foley.com
akmeid@foley.com

*Attorneys for Aios Inc. d/b/a Fella Health and Delilah, Fella Medical Group P.A., and Fella Medical Group P.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, I electronically filed **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed on December 12, 2025, at San Francisco, California.

_/s/ Micah A. Chavin_
Micah A. Chavin