**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

NOVO NORDISK A/S ET AL.,

    Plaintiffs,

vs.

AIOS INC. D/B/A FELLA HEALTH ET AL.,

    Defendants.

Case No.: 4:25-cv-06560-YGR

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 43

Pending before the Court is defendants Aios Inc. ("Fella Health"), Fella Medical Group P.A., and Fella Medical Group P.C.'s (collectively, "Fella Medical Groups") motion to dismiss. (Dkt. No. 43.) Plaintiffs Novo Nordisk A/S and Novo Nordisk Inc. (collectively, "Novo") allege that Fella Health's advertising for its compounded semaglutide products violates the Lanham Act and California's False Advertising Law ("FAL"), and that Fella Health's business model permits the corporate practice of medicine, which in turn violates California's Unfair Competition Law ("UCL"), and common law unfair competition.[1] (Amended Complaint ("AC"), Dkt. No. 42.)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **DENIES** defendants' motion to dismiss.

I.   **FACTUAL BACKGROUND**

The amended complaint alleges as follows:

Novo Nordisk is a drug manufacturer that developed the FDA-approved drugs Ozempic, Wegovy, and Rybelsus, which regulate appetite and blood sugar, and can lead to significant weight loss. (AC ¶ 6.) Novo's drugs contain the active ingredient semaglutide, a glucagon-like peptide-1 ("GLP-1"). (*Id.* ¶¶ 6, 65.)

Fella Health is a telehealth platform that markets weight loss treatments, including a compounded version of semaglutide. (*Id.* ¶ 29.) Compounded drugs are drugs that are combined,

---

[1] Novo advances its Lanham Act and FAL claims against only Fella Health. Novo advances its UCL and common law unfair competition claim against all defendants.

modified, or altered to "create a medication tailored to the needs of an individual patient." (*Id.* ¶ 9, n.1.) They are not generic drugs and are not subject to an FDA-approval process. (*Id.* ¶¶ 7, 51, 62.) Section 503A of the Food, Drug, and Cosmetics Act ("FDCA") permits drug compounding in certain circumstances, but generally restricts compounded drugs that are identical to commercially available drugs. (*Id.* ¶ 9, n.1.) When a drug is not commercially available and thus lands on the FDA's drug shortage list, the FDA permits 503B outsourcing facilities to copy that drug by using the same drug substance (or active pharmaceutical ingredient) without modification. (*Id.*) Novo's Wegovy was added to the FDA's shortage list on March 31, 2022, and Ozempic was likewise added on August 23, 2022. (*Id.* ¶ 9, n. 2.)

At some point during the shortage, Fella Health began offering compounded semaglutide to its customers through prescriptions that Fella Medical Groups' providers write. (*Id.* ¶¶ 119, 141, 167.) The FDA lifted the Ozempic and Wegovy shortage on February 21, 2025. (*Id.* ¶ 12.) Novo alleges that two months later, in April 2025, Fella Health converted its patients' prescriptions *en masse* to ostensibly personalized doses so that it could continue providing compounded semaglutide. (*Id.* ¶¶ 142–147.) Fella Health supposedly did so by default and without consulting health care providers. (*Id.*) Moreover, Fella Health's non-physician, commercial employees routinely provide their customers medical advice on social media platforms and through text message. (*Id.* ¶ 124.)

Novo also alleges that Fella Health's advertising is false and misleading. Fella Health falsely compares its product to Novo's FDA-approved drugs. For example, Fella Health advertises that semaglutide is "an FDA approved medication" (*id.* ¶ 181), even though the FDA has not reviewed or approved Fella Health's products (*id.* ¶¶ 186, 187, 192). Instead, the FDA reviews complete drugs like Novo's Ozempic, not drug substances like semaglutide. Fella Health also cites Novo's clinical studies and trials when referring to the effectiveness of Fella Health's compounded semaglutide (*id.* ¶¶ 205–209) and represents that semaglutide is "the generic form" of Ozempic and Wegovy (*id.* ¶¶ 189, 194). Finally, Fella Health's promotional materials falsely claim that its compounded semaglutide is "tailored to your body" (*id.* ¶ 174) and can be "personalized" or

United States District Court
Northern District of California

2

"customized for dosage strength or formulation when commercial options aren't a fit" where defendants modified compounded semaglutide prescriptions *en masse* (*id.* ¶ 175).

Novo filed suit on August 4, 2025. (Dkt. No. 1.) After Novo amended its complaint, the Fella Health defendants moved to dismiss. (Dkt. No. 43.)

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). The standard is well known and not in dispute.

## III.    DISCUSSION

Fella Health defendants move to dismiss Novo's complaint on four grounds: (1) Novo lacks standing under Article III, the Lanham Act, and the UCL; (2) the FDCA preempts Novo's FAL claim, which also fails to identify a false statement; (3) Novo cannot enforce California's prohibition on the corporate practice of medicine under the guise of UCL; and (4) Novo does not adequately plead an unfair competition claim. The Court analyzes each.

### A.    STANDING

As a gating issue, Fella Health argues that Novo lacks both Article III and statutory standing to advance its claims.

#### 1.    *Article III Standing*

Fella Health claims that Novo fails to establish Article III standing because Novo did not plead that *it* was injured and only pleads that *consumers* may be injured. To establish standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

The Court easily rejects Fella Health's argument. Novo alleges that Fella Health's marketing and structure allowed Fella Health to secure an unfair market advantage, causing an "associated decline in [Novo's] market share" (AC ¶ 21), "lost sales and profits" (*id.* ¶ 228), and damage to Novo's goodwill (*id.*). In short, Novo maintains that "Fella Health gained an unfair advantage in the semaglutide weight loss market, selling its knockoff semaglutide products and

3

diverting sales away from Novo Nordisk." (*Id.* ¶ 140.) Those allegations are sufficient to establish injury in fact. *Novo Nordisk A/S et al. v. Ikon Health*, 2026 WL 196475, at *3 (N.D. Cal. Jan. 26, 2026) ("Here, Novo Nordisk has established a sufficient injury for Article III standing[.] This is not a case where Novo Nordisk is seeking redress based simply on a claim that Ikon Health has violated the law."); *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL 11593043, at *3 (N.D. Cal. Aug. 16, 2021) (holding that plaintiff established an injury-in-fact where the parties were competitors and plaintiff alleged that defendant "deceived consumers into buying" its products over plaintiff's based on false representations.); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) ("In a false advertising suit, a plaintiff establishes Article III injury if 'some consumers who bought the defendant['s] product under [a] mistaken belief fostered by the defendant would have otherwise bought the plaintiff['s] product.'"); *Novo Nordisk A/S v. Liferxmd*, 2026 WL 222214, at *3 (D.N.J. Jan. 28, 2026) ("Allegations of consumer confusion, loss of goodwill, and reputational harm are sufficient to plead an injury in fact and confer standing under Article III.")

Fella Health's citation to a similar lawsuit holding otherwise, *Eli Lilly & Company v. Mochi Health*, does not persuade. There, Judge Corley dismissed Eli Lilly's complaint for lack of Article III standing where Eli Lilly alleged only "harm to consumers and only *reputational* harm to itself." *Eli Lilly & Co. v. Mochi Health Corp.*, 2025 WL 2998166, at *3 (N.D. Cal. Oct. 24, 2025) (emphasis in original). Here, by contrast, Novo alleges more than reputational harm. It alleges harm from lost market share and lost or diverted sales on top of its alleged reputational harm through the loss of consumer goodwill. (AC ¶¶ 140, 197–203, 228.)

### 2. Lanham Act Standing

Fella Health next argues that Novo fails to plead sufficient facts to establish statutory standing under the Lanham Act.

"In contrast to Article III standing, the Lanham Act does not allow all factually injured plaintiffs to recover." *ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2022 WL 612669 (9th Cir. Mar. 2, 2022) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)). Instead, "the zone-of-interests test and the proximate-cause requirement supplies the relevant limits

4

United States District Court
Northern District of California

on who may sue." *Lexmark*, 572 U.S. at 134. The zone-of-interests test is not "especially demanding" and requires a plaintiff to allege "an injury to a commercial interest in reputation or sales." *Id.* at 130–132. Under the proximate-cause requirement, a plaintiff must show "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Id.* at 133. Where a plaintiff "competes directly" with a defendant, "a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com*, 653 F.3d at 827. Fella Health argues that Novo meets neither the zone-of-interests test nor the proximate-cause requirement.

*a)*     <u>Zone-of-Interests</u>

Fella Health first argues that Novo is not its direct competitor and thus Novo cannot rely on a presumed commercial injury within the Lanham Act's zone-of-interest. It asserts that Fella Health is a telehealth platform that provides access to weight loss treatments (*id.* ¶ 29), while Novo is a drug manufacturer. Novo counters that Fella Health's own advertising belies that argument because it compares Fella Health's compounded semaglutide products to Novo's branded Ozempic and Wegovy. (*Id.* ¶¶ 188–89, 194–98, 206–07.)

A court in this district recently rejected Fella Health's argument in favor of Novo's in the context of a different GLP-1 drug. There, Judge Tigar determined that a similar telehealth company, Henry Meds, competed with drug manufacturer Eli Lilly where Henry's advertising drew a direct comparison between Eli Lilly's drugs and Henry's compounded tirzepatide. *Eli Lilly & Co. v. Adonis Health, Inc.*, 2025 WL 2721684, at *3 (N.D. Cal. Sept. 24, 2025). "[B]oth Henry and Lilly market[ed] and s[old] tirzepatide-containing drugs, to the same potential customers, i.e. they 'vie for the same dollars from the same consumer group.'" *Id.* (citing *TrafficSchool.com*, 653 F.3d at 827) (cleaned up). Other courts follow that conclusion. *Novo Nordisk A/S et al. v. Ikon Health*, 2026 WL 196475, at *3 (N.D. Cal. Jan. 26, 2026) ("When it comes to the market for semaglutide drugs, Novo Nordisk and Ikon Health are direct competitors."); *Novo Nordisk, Inc. v. DCA Pharmacy*, 745 F.Supp.3d 626 (M.D. Tenn. 2024) (same).

The Court agrees with the analysis of the other courts. In this case, like the others, Novo alleges that Fella Health advertises that its compounded semaglutide is comparable to Novo's

5

drugs, and that Fella Health's advertising reduced Novo's market share. Because the Court is convinced that Fella Health and Novo are direct competitors, the Court will presume commercial injury. In any event, Novo pleads sufficient factual allegations to support its claim that it lost sales and market share because Fella Health diverted customers to its compounded semaglutide and suffered reputational harm because consumers had negative experiences with Fella Health's compounded semaglutide. (AC ¶¶ 21, 140, 196–203.) The Court finds that Novo's pleading satisfies the zone-of-interests test.

> b)      *Proximate Cause*

Fella Health next argues that Novo has not alleged that Fella Heath proximately caused its alleged injury because physicians—not patients—control patient prescriptions. Both semaglutide products must be prescribed, and a physician may prescribe *either* the branded or compounded drug regardless of patient choice. Fella Health claims that its advertising and consumer requests have little impact on the clinical decisions that prescribers make. *Eli Lilly & Co. v. Willow Health Servs., Inc.*, 2025 WL 2631620, at *6 (C.D. Cal. Aug. 29, 2025) ("[R]egardless of what an advertisement says or what a consumer wants to buy, obtaining a prescription medication requires a physician to prescribe it. A physician prescribing a compounded medication is the proximate cause of a consumer/patient using compounded medication instead of Plaintiff's medication.")

Novo disagrees. It responds that Fella Health's telehealth platform does not offer an option for its contracted physicians to prescribe Novo's products (*id.* ¶ 167), and courts "have routinely found that Lanham Act claims can be maintained for prescription drugs, where the prescriber is the gatekeeper for the product." *Henry*, 2025 WL 2721684, at *4; *see also Ikon Health*, 2026 WL 196475, at *3 ("Ikon Health argues Novo Nordisk cannot establish proximate cause because the sale of its compound drugs requires a doctor's prescription and this is an intervening act that breaks the causal chain. This type of argument lacks merit.").

The Court finds Novo's argument, and the *Henry* line of cases, more persuasive. Although the *Willow* court found that a "physician prescribing a compounded medication" is an intervening proximate cause that breaks the chain of causation, it did not consider the circumstance alleged here, where a telehealth company created a network of licensed medical providers for the purpose

of prescribing, and steering its patients to, compounded drugs. (AC ¶¶ 29, 115, 116, 121, 167.) In this scenario, which the Court is required to assume true, "Fella Health does not offer any of Novo Nordisk's FDA-approved semaglutide-containing medicines on its website" (*id.* ¶ 167) meaning that Fella Health providers cannot prescribe Novo's drugs and therefore cannot be the neutral gatekeeper that the *Willow* court envisioned. More broadly, as the *Henry* court identifies, ruling otherwise would curtail Lanham Act liability for all drugs that require a prescription, which the case law does not support. *Henry*, 2025 WL 2721684, at \*4 (citing *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL 11593043, at \*6 (N.D. Cal. Aug. 16, 2021); *Allergan USA Inc. v. Imprimis Pharms., Inc.*, 2017 WL 10526121, at \*6 (C.D. Cal. Nov. 14, 2017).)

Here, Novo has sufficiently pled economic and reputational injury flowing from Fella Health's advertising by alleging that Fella Heath's advertisements divert and steer customers to compounded products. Those allegations meet the proximate-causation requirement. Accordingly, Novo has sufficiently pled standing under the Lanham Act.

### 3.    *FAL and UCL Standing*

Finally, Fella Health argues that Novo does not have standing to advance its FAL and UCL claims. To establish standing under the FAL and UCL, a plaintiff must allege (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury," and (2) "that that economic injury was the result of . . . the unfair business practice or false advertising that is the gravamen of the claim." *Ivie v. Kraft Foods Glob., Inc.*, 961 F.Supp.2d 1033, 1046 (N.D. Cal. 2013). "The standing requirements under California's FAL and UCL and the federal Lanham Act are generally the same." *Henry*, 2025 WL 2721684, at \*5 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017)).

Novo's UCL claim is predicated on Fella Health and Fella Health Medical Group's conduct that allegedly violates California's law prohibiting the corporate practice of medicine (the California Medical Practice Act or "MPA"). Novo alleges that the Fella Health defendants engage in the corporate practice of medicine in three independent ways: (1) Fella Health's CEO owns and controls the Fella Medical Groups and is not a physician; (2) Fella Health's non-physician employees provide medical advice to Fella Health's patient prescriptions *en masse* and without

consulting healthcare providers. (AC ¶¶ 117–18, 123–140, 142–164.) Novo argues that those MPA violations injure it because they provide Fella Health with an unfair competitive advantage.

The Court holds that Novo does not have standing to advance its first and second theories of causation under the UCL. That is, Novo has not alleged how *it* is harmed because Fella Health's CEO is not a physician, or because Fella Health's corporate employees provide medical advice. "[T]here must be a causal connection between the harm suffered and the unlawful business activity." *Thieme v. Cobb*, 2016 WL 3648531, at *6 (N.D. Cal. July 8, 2016). Accordingly, Novo does not have standing to advance those UCL theories.

By contrast, the Court holds that Fella Health's alleged practice of changing prescriptions *en masse*, with the help of the Fella Medical Groups, harmed Novo because doing so purportedly steered customers away from Novo and towards Fella Health and caused Novo to lose market share and sales. Novo has alleged facts sufficient to establish standing under the UCL based on that theory. The same is true for Novo's FAL claim, which in effect mirrors standing under the Lanham Act because Fella Health's advertisements harm Novo by diverting and steering customers away from Novo and toward Fella Health.[2]

In sum, the Court finds that Novo has standing to advance its Lanham Act, False Advertising, and unfair competition claims. Novo also has standing to advance its UCL claim based on Fella Health's purported efforts to alter patient prescriptions without consulting a medical professional.

### B.   FALSE ADVERTISING

Fella Health next moves to dismiss Novo's false advertising claim for several reasons. Fella Health argues that the FDCA preempts Novo's claim, Novo fails to identify false statements, and Novo otherwise fails to plead that consumers were, or are likely to be, misled.

___

[2] Fella Health argues in a footnote that Novo failed to allege that defendants Fella Medical Group P.A., and Fella Medical Group P.C. harmed it. On the contrary, Novo alleges that "Fella Medical Group, P.C. and Fella Medical Group, P.A. ("Fella Medical Groups") have aided and abetted Fella Health's unlawful corporate practice of medicine by following its directives as an unlicensed corporate entity in violation of California Business & Professions Code §§ 2400, 2502 et al." (AC ¶¶ 236, 237.) Novo alleges that the telehealth company relies on the Fella Medical Groups to prescribe the medicines central to this complaint and Novo's theory.

To state a claim for false advertising under the Lanham Act, the FAL, and common law unfair competition,[3] a plaintiff must allege that: "(1) [the defendant] made a false statement of fact in a commercial advertisement; (2) the statement deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it was likely to influence the purchasing decision; (4) the false statement entered interstate commerce; and (5) [plaintiff] has been or is likely to be injured as a result of the false statement." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671 (9th Cir. 2023). To meet the Lanham Act's falsity pleading requirement, a plaintiff must allege that "the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Novo challenges four categories of false advertising or misleading statements from Fella Health, including claims that:

- Fella Health's compounded semaglutide is personalized and "tailored to your body." (AC ¶¶ 174–178.)

- "Semaglutide" is "FDA-approved GLP-1 weight loss medication" (*id.* ¶¶ 181–187) that contains the same active ingredient as Novo's Ozempic and Wegovy.

- "[I]n clinical trials, semaglutide users lost an average of 15% of their body weight – with 1 in 3 users losing over 20%" in advertising Fella Health's results. (*Id.* ¶¶ 205–210.)

- Semaglutide is "the generic name of a revolutionary drug, commonly known under its brand names Ozempic and Wegovy." (*Id.* ¶¶ 171, 189, 194.)

Fella Health responds with three primary arguments: *First*, its statements about personalization and FDA approval are a direct challenge to—and are therefore preempted by—the FDCA, which permits compounded drugs in certain circumstances. *Second*, its claims as to effectiveness are unsubstantiated, and are not actually false. *Third*, Novo fails to show that consumers of Fella Health's compounded semaglutide were, or are likely to be, misled. The Court addresses each.

---

[3] "In the Ninth Circuit, claims of unfair competition and false advertising under [the FAL and the UCL] are substantially congruent to claims made under the Lanham Act." *Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*, 2022 WL 20286688, at *9 (N.D. Cal. Feb. 24, 2022); *see also Henry*, 2025 WL 2721684, at *6 (same); *Guardant Health, Inc. v. Natera, Inc.*, 580 F.Supp.3d 691, 712–13 (N.D. Cal. 2022) (same).

*1. FDCA Preemption*

Fella Health maintains that Novo's false advertising claims are a poorly disguised effort to privately enforce the FDCA and are an attack on the compounding industry. Novo disputes that framing and explains that it challenges Fella Health's literally false statements about the extent to which Fella Health personalizes compounded semaglutide and FDA approval. (AC ¶¶ 141–164, 174–77, 182–84.)

The FDCA preempts state law claims that, in effect, attempt to privately enforce the FDCA. *Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040 (9th Cir. 2022). In the Ninth Circuit, the FDCA preemption analysis turns on whether a plaintiff "attempt[s] to use causes of action available under state law to claim damages for violations of duties owed under the federal FDCA" and whether "such a claim would require litigating" the FDCA. *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 848–49 (9th Cir. 2024).

Novo's claims do not rise or fall with Fella Health's duties under the FDCA. Novo may prove that Fella Health falsely suggested that its compounded semaglutide was FDA approved, or that a drug is personalized, without litigating the FDCA's requirements. *Henry*, 2025 WL 2721684, at *9 (holding that the FDCA did not preempt Lilly's false advertising claims where Lilly alleged that Henry falsely represented that its compounded drug was "tailored" to its patients); *see also Ikon Health*, 2026 WL 196475, at *4 ("With respect to preemption, Novo Nordisk has not alleged that Ikon Health has violated federal law by selling compounded drugs. Thus, preemption is not at issue."); *Novo Nordisk A/S v. Mai Kaga, MD LLC*, 2025 WL 3707550, at *5 (D.N.J. Dec. 22, 2025) ("Here, the Complaint contains no allegation that Defendant's products violate the FDCA . . . . Rather, Plaintiffs' claims are premised on the allegation that Defendant falsely markets its semaglutide products as FDA-approved, when they are not.") (collecting cases). This Court joins the others in rejecting Fella Health's argument on this ground.

*2.    "Unsubstantiated" versus "False"*

Fella Health next argues that its statements regarding its clinical trials "lack substantiation" and are not "literally false." Novo explains that it challenges Fella Health's advertising that suggests that compounded semaglutide has undergone clinical trials when it has not.

United States District Court
Northern District of California

"[A] plaintiff may not sustain false advertising claims based solely on lack of substantiation grounds." *Strategic Partners, Inc. v. FIGS, Inc.*, 2019 WL 12435672, at *6 (C.D. Cal. Aug. 19, 2019). "Courts have been careful to distinguish between allegations that a defendant's advertising claims are actually false and allegations that such claims lack substantiation." *In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1232 (N.D. Cal. 2012). Reliance on "a lack of scientific evidence or inconclusive, rather than contradictory, evidence" is not sufficient. *Henry*, 2025 WL 2721684, at *7.

Here, the Court agrees with Novo that its allegations concern Fella Health's representation that its compounded semaglutide underwent clinical trials, not whether the FDA substantiated Fella Health's claims. Fella Health publishes on its website that "[i]n clinical trials, semaglutide users lost an average of 15% of their body weight– with 1 in 3 users losing over 20%." (AC ¶¶ 205–10.) That statement corresponds to a graph, with a line labeled "Fella Health," that reflects that Fella Health users would lose at least 15% of their body weight. (*Id.* ¶ 206.) To support that number, Fella Health cites the clinical studies Novo conducted on Ozempic, Wegovy, and Rybelsus (*id.* ¶ 207) even though "Fella Health has not conducted any placebo-controlled or clinical studies" on its compounded semaglutide (*id.* ¶ 208). Fella Health also misrepresents that semaglutide is a generic drug, falsely suggesting that its compounded drug has been subject to the FDA's generic approval process (through an abbreviated new drug application or ANDA). Fella Health's alleged misrepresentations are capable of being actually false and are not merely unsubstantiated.

*Henry* helps clarify this distinction. There, Eli Lilly argued that Henry's statement that compounded drugs were "safe and effective" was misleading because that statement "implies that there are scientific studies establishing" that fact. *Henry*, 2025 WL 2721684, at *7. Judge Tigar held that Henry's statement was unsubstantiated, not actually false, because "Henry has not claimed that its products are clinically proven to do anything" or that "a specific study used to evaluate its product" supported its results. *Id.* In this action, unlike in *Henry*, Novo alleges that Fella Health's advertisements did both.

The Court rejects Fella Health's argument on this ground.

11

United States District Court
Northern District of California

### 3.    Customer Confusion

Finally, Fella Health argues that Novo fails to allege whether consumers were misled or are likely to be misled by Fella Health's misrepresentations. It argues that Novo's supporting Reddit threads—which suggest that consumers were confused about the source of compounded semaglutide—are evidence that consumers were dissatisfied with Fella Health's products for "numerous" reasons, not that consumers relied on Fella Health's advertisements. Novo maintains that it need not prove consumer reliance at this juncture.

The Court agrees with Novo. Fella Health raises factual disputes that cannot be resolved on a motion to dismiss and otherwise overstates Novo's burden. "Actual deception is a question of fact, and at the pleading stage the plaintiff need only allege specific misleading statements and explain why they are misleading in accordance with Rule 9(b)." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F.Supp.3d 623, 636 (N.D. Cal. 2019). Novo has met that burden.

The Court also rejects Fella Health's argument on this ground.

### C.    CORPORATE PRACTICE OF MEDICINE UNDER THE UCL

Fella Health and the Fella Medical Groups move to dismiss Novo's UCL claim because Novo, as a private actor, cannot enforce California's Medical Practice Act ("MPA", Cal. Bus. & Prof. Code §§ 2400, 2052) and cannot evade that limit by advancing the same claim under the UCL's unlawful prong. They also assert that Novo fails to state a claim that Fella Health violated the MPA. The Court will address each argument, limited to Novo's remaining MPA theory.

### 1.    Novo Nordisk may assert a MPA claim under the UCL

By way of background, California bans the corporate (or unauthorized) practice of medicine, and prohibits corporations, lay entities, or any non-licensed persons or entities from practicing medicine. Cal. Bus. & Prof. Code § 2400. "Any person who practices or attempts to practice, or holds himself or herself out as practicing [medicine] . . . without having at the time of doing so a valid, unrevoked, or unsuspended certificate . . . is guilty of a public offense." *Id.* § 2052. The California Medical Board is responsible for "[t]he enforcement of the disciplinary and criminal provisions of the Medical Practice Act." *Id.* § 2004. Neither party disputes that "[u]nder

12

California law, there is no private right of action for the unauthorized practice of medicine." *Israel v. Carter*, 2022 WL 874941, at *4 (E.D. Cal. Mar. 24, 2022).

Although there is no private right of action, the UCL permits plaintiffs to borrow from other statutes to form the basis of a claim for unlawful competition. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). "[V]irtually any state, federal or local law can serve as the predicate for an action under [the UCL]." *Id.* (citing *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal.App.4th 508 (2002)).

Here, Fella Health and the Fella Medical Groups argue that an MPA claim cannot form the basis of a UCL violation because the MPA contains a comprehensive administrative scheme that precludes enforcement. They maintain—without citing legal authority—that only the California Medical Board is vested with the authority to investigate complaints of unauthorized practice of medicine. That argument is not entirely supported by the case law. Courts in this district and in California have adjudicated claims of unauthorized practice of medicine under the UCL. *Am. Acad. of Emergency Med. Physician Grp., Inc. v. Envision Healthcare Corp.*, 2022 WL 2037950, at *8 (N.D. Cal. May 27, 2022) ("[T]his [would] not be the first time courts have been called upon to adjudicate whether an entity was engaged in the unauthorized practice of medicine.") (citing *Shuts v. Covenant Holdco LLC*, 208 Cal.App.4th 609, 623 (2012) and *Conrad v. Med. Bd. of California*, 48 Cal.App.4th 1038 (1996)).

In *American Academy of Emergency Medicine v. Envision Healthcare*, for example, Judge Breyer declined to abstain from presiding over a corporate practice of medicine (CPOM) dispute advanced through the UCL. *Id.* Under the abstention doctrine, a court may abstain from deciding lawsuits that involve determining complex economic policy that is best handled by a legislature or administrative agency. *Id.* In *American Academy*, plaintiffs alleged that the defendant's business model violated California's prohibition on the corporate practice of medicine because the defendant corporation owned, created, and controlled professional medical corporations. *Id.* at *4–5. Judge Breyer declined to abstain because the California Medical Board was not required to "adjudicate this case" and there was a "fair amount of guidance available" to the court. *Id.* at *7–8. For example, and relevant here, the Board had explained that "health care decisions should be made by

13

a physician licensed in the State of California and would constitute the unlicensed practice of medicine if performed by an unlicensed person" and "'business' or 'management' decisions and activities, resulting in control over the physician's practice or medicine, should be made by a licensed California physician and not by an unlicensed person or entity." *Id.* at *8. Judge Breyer concluded that "there is no reason now to believe that MBC would be better positioned than this Court to assess some of the more complex allegations that bear on CPOM." *Id.*

Fella Health and the Fella Medical Groups, in effect, request that the Court abstain from this cause of action. The logic of *American Academy*, however, applies with equal force here, where the California Medical Board seemingly has made the relevant policy determinations. Fella Health does not cite any cases in this context that suggest otherwise. *See e.g. Farmers Ins. Exch. v. Superior Ct.*, 137 Cal.App.4th 842, 852 (2006) (relating to a ballot proposition). The Court rejects Fella Health's argument that Novo cannot advance a UCL claim based on the unauthorized practice of medicine *at this juncture*.

At the March 3, 2026 hearing, the Court raised concerns about the minimal briefing and case law cited on this somewhat novel claim. The Court reserves the option to address the issue again at summary judgment where a full record may assist the Court in determining whether individualized inquiries into patient prescribing decisions are required.

### 2. *Novo Nordisk States a Claim Under the MPA*

Fella Health and the Fella Medical Groups next argue that Novo's allegations do not suggest that they violated the MPA. Novo alleges that Fella Health defendants violated the MPA when they "changed patient prescriptions *en masse*, disregarding the individualized clinical assessment by a licensed physician required under California law" in response to Ozempic and Wegovy's removal from the shortage list. [4] (AC ¶ 141.) The MPA prohibits the "[p]rescribing, dispensing, or furnishing dangerous drugs as defined in Section 4022 [i.e., a prescription drug] without an appropriate prior examination and a medical indication, [which] constitutes unprofessional conduct." Cal. Bus. & Prof. Code § 2242.

---

[4] Novo also argues that Fella Health violates the MPA by employing a non-physician CEO and by providing medical advice, through non-licensed professionals, on the internet. As explained above, Novo does not have standing to advance those theories. *See supra*, III.A.3.

14

United States District Court
Northern District of California

Fella Health and the Fella Medical Groups first argue that the FDCA preempts Novo's MPA claim because Novo challenges whether Fella Health's compounded semaglutide was adequately individualized. A plaintiff's claim is preempted under the FDCA where it asserts that the plaintiff "is harmed economically because the defendant violated the FDCA" or that the "purported state law violation is of a law that says in substance 'comply with the FDCA,' not a traditional common law tort." *Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1050 (9th Cir. 2022). Here, defendants misstate Novo's complaint. In this action, Novo does not challenge whether Fella Health's compounded semaglutide was adequately individualized under the FDCA. Instead, Novo challenges Fella Health's act of changing *en masse* its offered compounded semaglutide without consulting, clinically evaluating, or otherwise assessing its patients. That claim is not preempted by the FDCA.

Fella Health and the Fella Medical Groups next argue that Novo does not plead sufficient factual allegations to support its claim that Fella Health switched patient prescriptions *en masse* and take aim at Novo's allegations related to tirzepatide—a compounded GLP-1 based on Eli Lilly's branded drugs. Novo's factual allegations are sufficient at this juncture. Novo cites to Reddit posts from Fella Health explaining that if its patients do not "opt in" to receiving several months' worth of "copied" compounded semaglutide up front, Fella Health will "transition [patients] to a personalized prescription by default that will continue to be shipped monthly." (AC ¶ 142.) Fella Health confirmed on a similar online thread that "commercially identical production must be halted" given that the FDA shortage was over, but that "personalized semaglutide prescriptions (e.g. a different modality, dosage increments, and/or a different formulation with an additional ingredient like a b vitamin or amino acid alongside the semaglutide) will still be available." (*Id.* ¶ 147.) It emphasized that those changes would occur *by default*. To support its theory, Novo also cites a similar occurrence in late 2024, where Fella Health altered its patients' prescriptions for the compounded GLP-1 tirzepatide to include additives like glycine or l-arginine without informing patients. (*Id.* ¶¶ 150–164.) Taken together, those allegations are sufficient to state a claim that Fella Health violated the MPA by allegedly switching patient prescriptions *en masse* for business justifications and without an appropriate prior examination.

15

### D.    UNFAIR COMPETITION

Finally, Fella Health and the Fella Medical Groups argue that Novo's common law unfair competition claim must be dismissed because Novo does not identify which of Fella Health's alleged acts constitutes unfair competition and has not alleged that Fella Health attempts to pass off its drugs as Novo Nordisk's.

In California, "the common law tort of unfair competition is generally thought to be synonymous with the act of passing off one's goods as those of another." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992); *see also Sybersound Recs., Inc. v. UAV Corp.,* 517 F.3d 1137, 1153 (9th Cir. 2008); *Bakemark USA, LLC v. Navarro*, 2023 WL 3317001 (C.D. Cal. Apr. 28, 2023)). "[S]tate common law claims of unfair competition are 'substantially congruent' to claims made under the Lanham Act, and thus share the same analysis." *ThermoLife Int'l, LLC v. Compound Sols., Inc.*, 848 F. App'x 706, 709 (9th Cir. 2021).

Here, Novo sufficiently alleged that Fella Health attempted to pass off its products as a generic, and equally effective, form of Ozempic, Wegovy, and Rybelsus. Moreover, because the Court previously found that Novo sufficiently pled a Lanham Act claim, and the two claims share the same analysis, Novo's unfair competition claim survives.

Accordingly, the Court **DENIES** Fella Health and the Fella Medical Groups' motion to dismiss Novo's common law unfair competition claim.

## IV.    CONCLUSION

The Court **DENIES** Fella Health and the Fella Medical Groups' motion to dismiss.

Fella Health shall file an answer to the complaint within twenty-one days of this order. The Court sets a case management conference for May 4, 2026 at 2:00 p.m. on the Zoom platform.

This terminates Dkt. No. 43.

**IT IS SO ORDERED**

Date: March 10, 2026

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

16