**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NOVO NORDISK A/S and NOVO NORDISK INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AIOS INC. d/b/a FELLA HEALTH AND DELILAH, FELLA MEDICAL GROUP P.A., and FELLA MEDICAL GROUP P.C.,<br><br>Defendants. | Case No. 4:25-cv-06560-YGR<br><br>[MODEL WITH REVISIONS]<br><br>STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION |

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3. PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the

costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only ESI created or received between January 1, 2021 and present will be preserved;

b) Because these data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), the parties agree not to preserve the following: (i) Orphaned data: unknown or unindexed materials retained in tape, floppy disk, optical disk, or similar formats, for purposes of disaster recovery; (ii) Server, system, or network logs; (iii) Operating system files, executable files, and system files included on the National Institute of Standards and Technology List (www.nsrl.nist.gov/); (iv) ESI stored in volatile and non-volatile memory (including, but not limited to, Random Access Memory ("RAM"), Read-only Memory ("ROM"), and cache memory) or in temporary or cache files (including, but not limited to, internet history, web browser cache, and cookie files) wherever located; (v) Data stored on photocopiers, scanners, and fax machines, unless routinely maintained in the ordinary course of business; (vi) "Slack," "fragmented," or "unallocated" data on hard drives for data that was deleted prior to the duty to preserve arising; (vii) Online access data, such as temporary internet files, history, caches, cookies, etc.; (viii) Data in metadata fields that are frequently updated automatically in the usual course of business; (ix) Draft email messages; (x) ESI affected by ransomware or malware or that otherwise has been corrupted or is otherwise unable to processed without extraordinary efforts; (xi) ESI temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily as part of a laboratory report; (xii) ESI comprising structural files (e.g., .CSS, .XSL, .XML, .DTD, etc.), applications, or interfaces that do not contain substantive content and are not necessary for the processing, review, rendering of other ESI; (xiii) Data remaining from systems, applications, or interfaces is unintelligible on the systems in use; (xiv) Data or information input to, or generated by, generative artificial intelligence ("GenAI"), large language models ("LLMs"), or other similar technology; and (xv) Any other source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

**4. SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

<u>a)</u> <u>Search methodologies.</u> The parties agree that a responding party is best situated to evaluate the procedures, methodologies, and technologies appropriate for producing its own electronically stored information. As such, a party may use one or more methodologies to identify, search, collect, cull, review and produce responsive and non-privileged ESI,

including, but not limited to search terms, other objective delimiters (such as email domains), and/or the use of other analytics or technology-assisted review technology, including generative-AI technology.

b) Search terms. If a Producing Party uses search terms to identify, search, or cull potentially responsive ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall meet and confer regarding any disputes over the disclosed search terms. In the event that a Producing Party claims burden with respect to modified and/or additional search terms proposed by a Requesting Party, the Producing Party may provide a hit report for the terms at issue. The Producing Party reserves all rights to further review documents hitting on search terms for responsiveness, privilege, and other determinations prior to production.

c) Technology-Assisted Review (TAR). A Producing Party may use TAR (technology-assisted review) during the culling and review process of ESI, which may be applied in addition to search terms. To the extent a party chooses to use technology assisted review to make a responsiveness decision on documents and withhold such documents from production, that party shall disclose the name of the tool it used.

d) De-Duplication. The parties shall make reasonable efforts to globally de-duplicate ESI. No producing party shall be required to conduct manual review to eliminate duplicates, including, but not limited to, hard-copy documents that are exact duplicates of electronic versions. All ESI will be de-duplicated, on a family level, using MD5 or SHA1 Hash values, or an agreed to de-duplication method. All files bearing an identical Hash value are a duplicate group. The parties may produce one document group/family for each duplicate ESI group; however, a producing party will identify any additional custodians for duplicate files or email messages (by the "AllCustodians" metadata field included in paragraph 16(h), below), provided that such information can be automatically populated with industry standard ESI processing tools.

c) Email Threading. To reduce unnecessary volume in the review and production of emails, the parties may use email thread suppression. As used in this Order, email thread

suppression allows the producing party to group emails into email thread groups and, within those thread groups, to produce (if responsive and not privileged) only emails that contain unique text or attachments ("inclusive emails"). Where a prior email in a thread contains a unique attachment to the email, that prior email and attachment will not be suppressed as a lesser included email and will be produced (if responsive and not privileged). Emails suppressed under this paragraph need not be reflected on the party's privilege log.

d) Document Versioning. To reduce the volume of highly duplicative documents, the parties may elect to produce only the current version of relevant documents. The parties will meet and confer regarding requests for specific document versions not produced under this Order.

e) Hyperlinked Files. A hyperlinked file is not part of the same document family as the document containing the hyperlink, and a producing party need not produce the hyperlinked file as such. However, upon a reasonable and particularized request, a producing party will produce or identify hyperlinked files to the extent it can locate them using reasonable efforts, provided that such documents are relevant and not otherwise protected from production, including by attorney-client privilege or the work product doctrine. The production of a hyperlinked file shall not constitute an admission by the producing party that the produced hyperlinked file is substantively identical to the version of the hyperlinked file that existed at the time the document containing the hyperlink was created, sent, or received, or that the produced version of the hyperlinked file was viewed by any viewer, sender, or recipient of the document. For the avoidance of doubt, produced hyperlinked files shall not be construed to be "as-sent" versions solely by virtue of a hyperlink reference in the document containing the hyperlink.

f) Password-Protected or Encrypted Files. With respect to any password-protected or encrypted documents or ESI that are encountered during processing, the producing party will take reasonable steps to resolve the protection so that the documents can be reviewed and produced if appropriate.

**5. PRODUCTION FORMATS**

General Provisions. All documents, unless otherwise specified in Section b below, whether stored as paper or ESI, will be produced by both Parties as black-and-white, single-page, 300 dpi (minimum) Group IV Tagged Image File Format ("TIFF") images, with text in document level text files, with a load file that references the images and text, and a .DAT file with delimiters that list the metadata fields below. TIFF files shall be named with a unique production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

Image reference load files will be provided in .LFP, .OPT and .DII formats. No Party may request or seek to compel the production of ESI in native format on a wholesale basis. After production in the format pursuant to this paragraph, the Parties will meet and confer regarding any good faith request for the production of ESI in native file format. The producing party shall produce the document in native format if the native file is reasonably accessible and production in native format is proportional to the needs of the case. A Party may make a good faith request that a document produced in black-and-white be re-produced in color, and the Parties will meet and confer regarding such a request. In certain circumstances, variations to the production format specified in this Order may be necessary. In such circumstances, the Parties will meet and confer regarding the production format. The parties agree not to degrade the searchability of documents as part of the document production process.

Native Format. The Parties shall produce Excel spreadsheets, PowerPoint presentations, audio files, video files and other files that are not reasonably usable in TIFF format in native format, unless the parties agree otherwise or the Court orders otherwise.

Voicemail and Mobile Devices. Absent a showing of good cause, voicemails, personal digital assistants, tablets, and mobile phones are deemed not reasonably accessible and need not be collected, searched, or preserved, except to the extent a party knows that such sources contain unique, relevant, and proportional information not reasonably available from other

sources.

Parent-Child Relationships. Parent-child relationships (e.g., the association between emails and their attachments, which are additional files sent with an email message) will be preserved to the extent practicable. Attachments will be consecutively produced with the parent email record. If an attachment is privileged, not responsive, or has a technical issue, a slip sheet may be inserted in the production. For the avoidance of doubt, hyperlinked files shall not be construed to be in the same family solely by virtue of a hyperlink reference and will be produced only in accord with paragraph 5(e) above.

Embedded Objects. Embedded objects within documents or ESI, including logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as child documents provided they are produced within the document itself. A Requesting Party may reasonably request a Producing Party to produce a document with the embedded objects extracted as separate files if material to the understanding of the document.

Dynamic Fields. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

Structured Data. To the extent that any Party requests production of unique, responsive fielded information that is stored in a structured database or database management system and not subject to an objection to production, the Producing Party will produce responsive data in a reasonably usable report form (i.e., .csv file, Excel file, or other delimited format). To the extent the Producing Party cannot produce a reasonably usable report, the Parties will meet and confer regarding the accessibility of such information and the format of production..

Time Zone. Unless otherwise agreed, all metadata pertaining to dates and times will be standardized to Pacific Time. The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in

any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with the load file formats, below.

Bates Numbering. Each page of a produced document will have a legible, unique page identifier ("Bates Number") that will consist of a Bates prefix and number electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. Files will be named according to the Bates number of the corresponding *.tiff image. The Bates number will:

i. Be consistent across the production;

ii. Contain no spaces or special characters other than a hyphen or underscore; and

iii. Be numerically sequential within a given document.

Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted.

Metadata to be Produced. The following metadata fields will be produced for each document to the extent that such information is available at the time of collection and processing:

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| BEGINDOC | Start Bates (including prefix) | Hard Copy, Email, Email Attachments, EFiles |
| ENDDOC | End Bates (including prefix) | Hard Copy, Email, Email Attachments, EFiles |
| BEGATTACH | Parent Start Bates (including prefix) | Hard Copy, Email, Email Attachments, EFiles |
| ENDATTACH | Last Attachment End Bates (including prefix) | Hard Copy, Email, Email Attachments, EFiles |
| VOLUMENAME | Production volume number | Hard Copy, Email, Email Attachments, EFiles |
| PAGECOUNT | Number of pages in | Hard Copy, Email, Email |

| | | |
|---|---|---|
| | document using Bates numbers. | Attachments, EFiles |
| ALLCUSTODIANS | When global deduplication has been employed, all custodians who are sources of an identical document; source of document (for database, shared area, etc.). | Email, Email Attachments, EFiles |
| FILEEXTENSION | File extension of electronic document | Email, Email Attachments, EFiles |
| FILENAME | File name of electronic document | Email Attachments, EFiles |
| ALLFILEPATHS | When global deduplication has been employed, all custodian file paths to a native file as it existed in its original environment for an identical document | EFiles |
| DATETIMESENT | Date email message was sent (mm/dd/yyyy format) / Time email message was sent (hh:mm:ss format) | Email |
| DATETIMERECEIVED | Date that email was received (mm/dd/yyyy format) / Time email was received (hh:mm:ss format) | Email |
| DATETIMECREATED | Date that a non-email electronic file was created (mm/dd/yyyy format) / Time that a non-email electronic file was created (hh:mm:ss format) | Email Attachments, EFiles |
| DATELASTMODIFIED | Date that a non-email electronic file was last modified (mm/dd/yyyy format) / Time that a non-email electronic file was last modified (hh:mm:ss format) | Email Attachments, EFiles |
| AUTHOR | Author | Hard Copy, Email Attachments, EFiles |

| | | |
|---|---|---|
| TO | Addressee/Recipient | Email |
| FROM | Sender/from | Email |
| CC | CC field | Email |
| BCC | BCC field | Email |
| SUBJECT | Email Subject | Email |
| CONFIDENTIALITY | Level of Confidentiality per Protective Order | Hard Copy, Email, Email Attachments, EFiles |
| REDACTED | Does the document contain redactions (Y/N)? | Hard Copy, Email, Email Attachments, EFiles |
| HASHCODE | Document MD5 or SHA1 hash value (used for deduplication or other processing) | Hard Copy, Email, Email Attachments, EFiles |
| TEXT | Link to full text or OCR text | Hard Copy, Email, Email Attachments, EFiles |

This list of metadata fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

Production Media. The producing Party may produce documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media. Each piece of Production Media will be assigned a production number, volume name or other unique identifying label corresponding to the date of the production as well as the sequence of the material in that production. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

**6. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI, including the possibility of rolling productions. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**7. DOCUMENTS PROTECTED FROM DISCOVERY**

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. This non-waiver protection applies regardless of whether the producing party took reasonable steps to prevent disclosure or to rectify the error.

This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

The provisions of Rule 502(b) do not apply.

b) The parties have agreed upon the following clawback protocol pursuant to Fed. R. Civ. P. 26(b)(5): If a producing party discovers that it has produced documents subject to a claim of privilege or work product protection, the producing party may promptly notify the receiving party in writing of the claim of privilege or protection and the basis for such claim. Upon receipt of such notice, the receiving party shall promptly return, sequester, or destroy the specified documents and any copies and shall not use or disclose the documents until the claim of privilege or protection is resolved. The receiving party may promptly present the information to the Court under seal for a determination of the claim, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) but may not assert that production itself waived the privilege or protection.

**9. PRIVILEGE LOGS**

Log Timing. Each party shall identify the date by which it expects to substantially complete its production of ESI under this order. Unless otherwise agreed by the parties or ordered by the Court, any privilege log for documents withheld or redacted on the basis of privilege, work-product doctrine, or other applicable protection shall be produced no later than 30 days after the producing party's substantial completion of document production.

receiving party with a log of the documents entirely withheld from production for a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity. When there have been any additions, modifications, or removals since the last served privilege log, and each subsequent log shall identify any addition, removals, and/or modifications from the prior iteration of the log.

Logging Format. A party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted. The log will be produced in Excel or CSV format, and will be populated with the following extracted metadata fields as they exist on the date a document is logged, to the extent this information is not privileged: Beginning Bates Number / Privilege Identifier, Unique Family Identifier, Custodian, From, To, CC, BCC, Subject, Author, File Name, File Extension, Date Sent, Date Created, Date Last Modified. All metadata related to email or other communications must include full email address and domain information to the extent it exists. In-house attorney names shall be designated with an asterisk; outside counsel names will be designated with a double asterisk. An email thread may be logged as a single entry. To the extent a party requires additional information to assess the privilege determination, the parties will meet and confer.

Logging Exclusions. No party is required to list on a privilege log any communications regarding these Proceedings exclusively between a party and its in-house counsel, outside counsel, an agent of outside counsel other than the party, any non-testifying experts, and, with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts. No party is required to list on a privilege log any privileged materials or work product created after November 12, 2025 by its in-house counsel, outside counsel, an agent of outside counsel other than the party, any non-testifying experts, and, with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts. No party is required to list on a privilege log communications regarding litigation holds or document preservation, collection, or review in this action. A Producing Party does not need to provide a log entry for a redacted document if the face of the document and the produced metadata provides the information that otherwise would

appear on a log and the privilege asserted for the redaction is noted on the face of the document in the redaction box. Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

Privilege Log Challenges. If a Party receiving a privilege log has a good faith basis for challenging a Producing Party's privilege determination, the Receiving Party shall promptly inform counsel for the Producing Party in writing of said challenge, identifying the specific documents by Bates Number or Privilege Identifier and providing the basis for the challenge, as well as a statement that the Receiving Party has a good faith belief that the challenged documents are material to their claims or defenses.

If, after conferring, the Parties cannot resolve the dispute despite good faith efforts to do so, the Party challenging a privilege determination may move for a ruling on the issue of privilege and the producing party bears the burden of establishing that the withheld information is privileged. If the Court finds that said information is privileged, said information shall remain withheld or redacted and may not be used as evidence by either Party at trial or at a hearing or be relied upon by either Party's experts. If the Court finds that said information is not privileged, the Producing Party shall provide an unredacted version of the document within fifteen (15) days of the Court's decision or, if the Producing Party challenges such a decision, within fifteen (15) days of the conclusion of any and all proceedings or interlocutory appeals challenging the decision, or within any time specified by the Court or local rules if they dictate a shorter period for production.

**10. MISCELLANEOUS**

Authenticity and Admissibility. Nothing in this Order shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time. This Order does not imply that discovery produced under the terms herein is properly discoverable, relevant, or admissible in this or in any other proceeding. Additionally, nothing in this Order shall be deemed to waive or limit any Party's right to object to the production of certain

electronically stored information, or to move for an appropriate order on the ground that the sources are not reasonably accessible.

Confidential Information. For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any document or data designated as confidential, as governed by a protective order regarding the protection of such information.

Non-Party Productions. The Parties may provide a copy of this Order to each recipient of a Rule 45 Subpoena seeking the production of documents in this matter and request that the non-party agree to follow the various provisions as to format set forth in this Order. Non-parties may elect to follow these provisions, or may otherwise meet and confer with the Requesting Party as to the format of any document productions.

**11. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: *\/s/ Michael R. Morey*

Counsel for Plaintiffs NOVO NORDISK A/S and NOVO NORDISK INC.

Dated: */s/ Micah A. Chavin*

Counsel for Defendants AIOS INC. d/b/a FELLA HEALTH AND DELILAH, FELLA MEDICAL GROUP P.A., and FELLA MEDICAL GROUP P.C.

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: September 8, 2026

THOMAS S. HIXSON
UNITED STATES MAGISTRATE JUDGE